**UNITED STATES of America, Appellee,**

v.

**Thomas GAMBINO, Defendant–Appellant.**

**No. 29, Docket 93–1754.**

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1994.

Decided July 6, 1995.

along with other high-ranking members, was a much-trumpeted triumph for law enforcement. One of these high-ranking members investigated and prosecuted is appellant Gambino, alleged by law enforcement officials to be a captain in the organization that bears his family name. He complains he was unfairly targeted by investigators because of that name. The jury thought otherwise, not believing it was his name at which the world grew pale, but the criminal activities associated with it. After a lengthy trial, it found him guilty.

Gerald L. Shargel, New York City (Judd Burstein, Graham Hughes, Michael Rosen, of counsel and on the brief), for defendant-appellant.

Geoffrey S. Mearns, Asst. U.S. Atty., for E.D.N.Y., Brooklyn (James Orenstein, Laura A. Ward, Asst. U.S. Attys., Zachary W. Carter, U.S. Atty., for E.D.N.Y., Brooklyn, of counsel), for appellee.

Before NEWMAN, Chief Judge, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal by Thomas Gambino from his judgment of conviction for racketeering consisting of illegal gambling and loansharking, and for conspiracy to engage in racketeering raises several issues. The first is whether governmental delay resulted in a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1988 & Supp. II 1990) (Act). The second issue relates to allegedly newly discovered evidence, consisting of a letter tending to impeach the credibility of the government's principal witness and a tape recording of the same witness, alleged to contain exculpatory *Brady* material that was not turned over to defense counsel. And the third issue is a challenge to the prosecution's redirect examination of the government's expert witness.

The Gambino organization, one of the most notorious organized crime families in the United States, was the subject of a series of investigations that involved an immense amount of electronic surveillance. These investigations, which culminated in the conviction of the organization's leader, John Gotti,

## I SPEEDY TRIAL ACT

We turn now to the first issue. The Speedy Trial Act requires that a defendant's trial begin within 70 days of the date he was indicted or his first appearance before a judicial officer, whichever date last occurs. *Id.* § 3161(c)(1). Most of the legal issues surrounding the application of the Speedy Trial Act have been long settled. But the complicated history of the interrelated prosecutions of the Gambino organization has led to a sequence of events without exact legal precedent. The various justifications advanced by the government for the delay warrant a somewhat detailed discussion. In the end, although the government violated its duty to accord appellant a speedy trial, the district court's failure to dismiss the indictment we think was harmless error.

### A. Chronology of Gambino's Indictments and Trial

Gambino was indicted along with John Gotti, Salvatore Gravano, and Frank Locascio on December 12, 1990. The indictment charged appellant with two counts of racketeering and racketeering conspiracy in violation of 18 U.S.C. § 1962(c) and (d). The predicate racketeering acts alleged were violations of 18 U.S.C. §§ 2 and 1955 (illegal gambling business) and 18 U.S.C. §§ 892 and 894 (loansharking). The district court declared the case complex and entered an order of excludable delay pursuant to § 3161(h)(8)(A) of the Act.

On June 26, 1991 Gambino moved to dismiss the charges against him, asserting that

a portion of the government's proof against him was derived from his immunized testimony given before an earlier grand jury. The trial judge deferred ruling on appellant's request for an evidentiary hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), until the completion of his trial. The hearing was ultimately held on July 16, 1993, at which time Gambino's *Kastigar* motion was denied.

In the meanwhile, after an adjournment of a trial date requested by Gambino's co-defendants, a scheduling conflict arose because appellant's trial in state court was set to begin in January 1992. As a result of this conflict the government had to move for a severance of Gambino's trial—to which he acceded—from that of his co-defendants. Gravano, another of the original defendants, pled guilty and then entered into a cooperation agreement with the government. The other two defendants, Gotti and Locascio, went to trial and were found guilty on April 2, 1992.

Four months later, on August 4, 1992, a superseding indictment was filed against Gambino together with two new co-defendants, Giuseppe Gambino and Philip Loscalzo. The charges against appellant in this indictment were, except for the addition of charges for violations of the Travel Act, 18 U.S.C. § 1952, as a predicate racketeering offense and as a separate offense, identical to those in the original. At a pretrial status conference held on August 21, 1992, the government declared its readiness to proceed within 70 days. Defendants requested a trial date after the second week of January 1993 to allow the newly added defendants' counsel time to prepare. A trial date was set for February 1, 1993 and, due to the complexity of the case, the trial judge entered a § 3161(h)(8)(A) order of excludable delay for the period from August 21, 1992 to February 1, 1993.

Gambino's counsel moved on September 24, 1992 either for a severance of his client's trial or for an adjournment of the trial date because that date conflicted with other matters he had scheduled. Both motions were denied. During the proceedings, Gambino's co-counsel observed that "if this case went in

May instead of February it would not be the end of the world." *United States v. Gambino,* 818 F.Supp. 541, 543 (E.D.N.Y.1993). Two weeks later, on October 9, defense counsel renewed his motion for adjournment of the trial date, informing the court, "Our case doesn't involve any speedy trial problems." *Id.* at 544. Despite this statement, a little less than two months later, on December 7, 1992, Gambino moved for dismissal of the superseding indictment because the government had violated Gambino's right to a speedy trial. The motion averred that the speedy trial clock had run between the conclusion of the Gotti trial on April 2, 1992 and the filing of the superseding indictment filed four months later, on August 4, a period of 124 days, well in excess of the statutorily permitted 70 days to commence trial. The motion was denied in a written memorandum and order. *See* 818 F.Supp. 541.

### B. *Government Reasons for Delay*

The government has advanced several reasons for its delay in bringing Gambino to trial: (1) complexity of the case, (2) tolling of the speedy trial clock by Gambino's *Kastigar* motion, and (3) waiver of the Act's protections by defense counsel's tactics. The district court added another, (4) the addition of new co-defendants. Each of these proffered reasons will be discussed in turn.

1. *Complexity.* In the above chronology the precise period of delay complained of is the 124 days between the April 1992 conclusion of the Gotti and Locascio trial on the original indictment and the first pretrial conference on the superseding indictment filed against Gambino in August 1992. Gambino concedes that the Act was tolled after the first indictment by the § 3161(h)(8)(A) order of excludable delay on account of complexity entered on December 21, 1990. The authorized exclusion requires the trial court to find and explain why the interests of justice outweigh the interests of the public and the defendant in a speedy trial. The court is vested with broad discretion to grant this exclusion when in its view the case's complexity makes it necessary to grant counsel further time to prepare in order to ensure a fair trial. *See United States*

*v. Rojas–Contreras,* 474 U.S. 231, 236, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985).

Gambino asserts that this tolling was effective only until the end of the Gotti trial. He maintains the speedy trial clock restarted after that trial and expired well before a new finding of complexity and a corresponding order of excludable delay were entered on August 21, 1992 with respect to the superseding indictment. Neither appellant's counsel nor the government needed additional preparation time and, but for the government's severance motion, appellant continues, his trial would already have been complete. Given that only the newly added co-defendants Loscalzo and Giuseppe Gambino required additional time, and the August 1992 adjournment of trial order was entered chiefly on their behalf, Gambino reasons, any complexities with respect to him no longer counted after the Gotti trial ended.

The government insists, in response, that the case against Gambino himself never ceased to be complex, and that the second § 3161(h)(8)(A) order entered in August 1992 merely confirmed the continuing complexity of a case involving hundreds of hours of video and audio tape recordings tracking the structure and criminal activities of the Gambino organization. Moreover, the government asserts, appellant's acquiescence in the August 1992 finding of excludable delay due to complexity prevents him from now raising an argument that the case against him was not complex.

■ The inherent intricacy of the government's case is not a relevant factor in the present discussion. Were Gambino's trial postponed to the next millennium the proof would still be complex. The length of an exclusion for complexity must be not only limited in time, but also reasonably related to the actual needs of the case. *See United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1198 (2d Cir.) ("indefinite delay" not tolerated), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); *United States v. LoFranco,* 818 F.2d 276, 277 (2d Cir.1987) (per curiam); *accord United States*

*v. Clymer,* 25 F.3d 824, 828 (9th Cir.1994) (continuance under § 3161(h)(8)(A) may not be open-ended).

■ Generally a trial court should set at least a tentative trial date in granting a complex case exclusion. *See Beech–Nut Nutrition,* 871 F.2d at 1198; *LoFranco,* 818 F.2d at 277 (order excluding time from speedy trial computation should be "made in anticipation of a particular trial date"). In not doing so, it risks having the exclusion "used either as a calendar control device or as a means of circumventing the requirements of the Speedy Trial Act." *LoFranco,* 818 F.2d at 277. Thus, we think the December 1990 order of excludable delay is best understood as having been made in contemplation of the commencement of trial on the original indictment. Despite the fact that his own case had been severed, Gambino's speedy trial clock therefore ceased to be tolled when that trial took place.[1]

The later finding of complexity made in August 1992 failed to set forth the reasons why the case against Gambino continued to be complex for purposes of the exclusion. Nor did that order operate to cure any Speedy Trial Act violation that might already have occurred since an order of excludable delay has no retroactive effect. *See United States v. Tunnessen,* 763 F.2d 74, 77 (2d Cir.1985). As appellant correctly points out, the August 1992 order was entered on behalf of co-defendants, granting their counsel time to get ready; it did not reflect appellant's counsel's need to prepare.

As the government now concedes, the appropriate procedure would have been for it to have requested a status conference with respect to Gambino's trial at the time its motion for a severance was granted, and to have obtained a new order of excludable delay. Alternatively, the first indictment could have been dismissed until the superseding one was prepared and filed, thus tolling the speedy trial clock pursuant to § 3161(h)(3)(B), (h)(6). None of those steps was taken by the prosecution. We are unable now to recast the

---

1. Because Gambino asserts only that the speedy trial clock restarted at the conclusion of the April trial, we need not, and do not, express any opinion as to whether the relevant time to restart the calculation would be the commencement, or the conclusion, of that trial.

procedure it followed so as to create a limit-less opportunity for prosecutorial procrastination.

■ 2. *Gambino's Kastigar Motion.* A second ground put forward by the government to excuse its delay is that Gambino's speedy trial clock was tolled when he filed a pretrial *Kastigar* motion in June 1991. As discussed above, decision on this motion was deferred until the conclusion of his trial. It is the government's contention that the entire period of time during which this motion was pending is excludable under the Act as "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). Noting that the government itself had requested the postponement of the *Kastigar* hearing until the conclusion of the trial, the district court rejected this argument as "disingenuous." 818 F.Supp. at 545.

The Supreme Court has said that the time from the filing of a pretrial motion until the conclusion of a hearing on that motion is excludable from the Act's 70-day limitation without regard to whether the delay is or is not reasonably necessary. *See Henderson v. United States,* 476 U.S. 321, 330, 106 S.Ct. 1871, 1876–77, 90 L.Ed.2d 299 (1986); *see also United States v. Matsushita,* 794 F.2d 46, 51 (2d Cir.1986). Hence, a defendant having made a motion cannot complain if its disposition is not expeditious; *all* the time consumed in deciding the motion is attributable to the defendant.

In the case at hand we are faced with the not uncommon circumstance of a trial judge postponing an evidentiary hearing until the conclusion of the case in chief. In such circumstance, the pendency of the motion no longer consumes the court's time and attention. The motion has in effect been tabled. Yet the government would have us rule that the fact of a pending motion cancels the time requirements of the Speedy Trial Act. Obviously were we to so hold, perpetual postponements would become routine in every case where a defendant seeks an evidentiary hearing.

The question is whether the Supreme Court's ruling in *Henderson* compels this result. Two circuits have recently disagreed as to the answer. In *United States v. Riley,* 991 F.2d 120 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 392, 126 L.Ed.2d 341 (1993), the Fourth Circuit ruled that when a hearing on a pretrial suppression motion is deferred until after trial, all of the time from the filing of the motion until its disposition is properly excluded under § 3161(h)(1)(F). It said that a motion so deferred does not "los[e] its character as a 'pretrial' motion for purposes of § 3161." 991 F.2d at 123. *Riley* also noted that Fed.R.Crim.P. 12(b) "does not define the term 'pretrial' by whether a motion is *in fact* decided before trial." *Id.* (emphasis in original). In contrast, *United States v. Clymer,* 25 F.3d 824 (9th Cir.1994), construing the same subdivision of § 3161(h) stressed the word "resulting" rather than the word "pretrial." The Ninth Circuit thought it was error to exclude all delay that co-incides with the motion's pendency because delay under the express terms of the Speedy Trial Act may be excluded "only when it in some way results from the pendency of the motion." *Id.* at 830.

■ We agree with the Ninth Circuit that Congress envisioned that the speedy trial clock be tolled when the expenditure of judicial resources to decide the motion would interfere with the case expeditiously proceeding to trial, and not tolled when the postponement of a pretrial motion until after trial does not effect a trial court's ability to proceed. We believe therefore Gambino's pretrial motion did not toll his speedy trial clock from the time that the hearing on the motion was postponed until after his trial. The government may not therefore rely on the pendency of this motion to excuse its delay. Were we to agree with the Fourth Circuit, the pretrial motion would have tolled the speedy trial clock and that would of course completely excuse the government's delay.

■ 3. *Waiver.* As a result of defense counsel's trial strategy, the government contends the Act's protections were waived. Whether the Act may be waived is presently an issue of first impression in this Circuit. We join with every circuit that has addressed

the issue in finding that defendants generally may not elect to waive the protections of the Act. *See United States v. Keith,* 42 F.3d 234, 238 (4th Cir.1994); *United States v. Saltzman,* 984 F.2d 1087, 1091 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993); *United States v. Willis,* 958 F.2d 60, 63 (5th Cir.1992); *United States v. Kucik,* 909 F.2d 206, 210–11 (7th Cir.1990), *cert. denied,* 498 U.S. 1070, 111 S.Ct. 791, 112 L.Ed.2d 853 (1991); *United States v. Berberian,* 851 F.2d 236, 239 (9th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989); *United States v. Ray,* 768 F.2d 991, 998 n. 11 (8th Cir.1985); *United States v. Pringle,* 751 F.2d 419, 434–35 (1st Cir.1984); *United States v. Carrasquillo,* 667 F.2d 382, 389 (3d Cir.1981).

The reason why a defendant cannot waive the time constraints of the Speedy Trial Act is that the public has as great an interest in a prompt criminal trial as has the defendant. Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, "justice delayed is justice denied." The legislative history of the Act confirms the importance of the non-waiver rule. *See Pringle,* 751 F.2d at 433 (citing S.Rep. No. 212, 96th Cong., 1st Sess. 28–29 (1979), *reprinted in* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974,* at 182 (Fed.Judicial Center 1980)). Thus, when Congress considered this issue, it limited waiver of the 70–day speedy trial requirement to narrowly defined circumstances, *i.e.,* a failure to move for dismissal prior to trial or prior to the entry of a guilty or *nolo contendere* plea. 18 U.S.C. § 3162(a)(2).

Nonetheless, several circuits have crafted an exception to the non-waiver rule, holding that when defendant's conduct causes or contributes to a period of delay, that time may be excluded from the running of the speedy trial clock. *See Pringle,* 751 F.2d at 434–35 (exception necessary to prevent defendants from "lulling the court and prosecution into a false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal"); *Kucik,* 909 F.2d at 211 ("Where a defendant actively participates in a continuance ... he cannot then 'sand-bag' the court and the government by counting that time in a speedy trial motion"); *see also, e.g., United States v. Fields,* 39 F.3d 439, 442–43 (3d Cir.1993) (approving *Pringle* rule in dicta); *United States v. Kington,* 875 F.2d 1091, 1108 (5th Cir.1989) (in dicta calling the *Pringle* exception a "sensible maxim").

Where the public's interest in swift justice is not disregarded, such an exception makes good sense. The reason is plain. The provisions of the Speedy Trial Act are not to be mistaken for the rules of a game where defense counsel's cunning strategy may effectively subvert Congress' goal of implementing sound trial management. *See United States v. Vasquez,* 918 F.2d 329, 337 (2d Cir.1990); *see also United States v. Beech–Nut Nutrition,* 677 F.Supp. 117, 118 (E.D.N.Y.1987) (Speedy Trial Act not intended as a "trap" for unwary courts and prosecutors), *aff'd,* 871 F.2d 1181, 1198 (2d Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989). It is possible, of course, that an overly broad application of the exception could swallow the non-waiver rule, permitting a waiver to be found whenever a defendant fails to object to continuance. *See Keith,* 42 F.3d at 239; *Willis,* 958 F.2d at 64. Were such to result, it would subvert Congress' aim that delays be permitted only as provided for in the Act. *Id.* at 64.

As a result, those courts recognizing the exception have placed tight restrictions on the finding of waiver. In *Willis,* the Fifth Circuit applied the *Pringle* exception to permit waiver under the very narrow circumstances where "defendant requests a continuance under an erroneous interpretation or application of one of the Act's provisions and the district court simply errs in its application of the Act to the defendant's request." *Id.* The Fourth Circuit, confronted with a continuance granted at government request without defense objection and although the trial court had failed to perform an "ends of justice" analysis, found the *Willis* exception too narrow. It held instead that if, upon review of the entire record, an appellate court concludes defendant affirmatively consented to a continuance, and that if the reasons for such a continuance would be sup-

ported by an ends of justice finding, then defendant may not assert a Speedy Trial Act violation for the period of the continuance. *Keith*, 42 F.3d at 239–40.

We do not think the *Pringle* exception swallows the non-waiver rule where appellant treats the protections of the Speedy Trial Act as a game of strategy. The trial judge plainly believed that Gambino's counsel had engaged in precisely this kind of gamesmanship, consistently requesting or acceding to delays throughout the pretrial stage; then making use of those same delays—either asked for or acquiesced in—by demanding that his indictment be dismissed. Four times in its opinion the district court cites Gambino's assertion that "the truth is that the Speedy Trial Act is obviously designed to permit defendants to take advantage of government errors." 818 F.Supp. at 544, 547–48.

■ Defense counsel never alerted the trial court or the prosecutor to the potential speedy trial problem. On the contrary, after the superseding indictment was returned, counsel repeatedly sought to have the trial date postponed. *See* 818 F.Supp. at 543–44. At a status conference held on October 9, 1992, counsel specifically informed the court that "our case doesn't involve any speedy trial problems." *Id.* at 544. Under some circumstances, such tactics might constitute waiver-creating delay. But here the right to a speedy trial guaranteed under the Act had already been violated, and defense counsel's delaying strategy may not be used as a reason retroactively to waive this guaranteed right. *See Tunnessen*, 763 F.2d at 77. If a violation occurred between April and August 1992, as Gambino insists, his counsel's later requests for deferral in October 1992 could not undo the earlier violation.

The October comments might properly have been considered by the trial court when it made a factual finding that appellant engaged in a consistent campaign of delay throughout the pretrial period, commencing well before the speedy trial clock was violated. Such a factual finding—were it based on significant pre-violation acts—might have been sufficient to support the conclusion that Gambino had waived his Speedy Trial rights.

Despite making this finding, there is no indication in the district court's opinion that it was conscious of the need to identify waiver occurring before the violation occurred. Nor does the record contain adequate support for its conclusion that Gambino's campaign of delay began before the alleged violation of the Act.

■ Further, we are able to identify only two instances of pre-violation conduct possibly pointing to waiver. The first is Gambino's refusal to seek a severance from the Gotti trial despite his upcoming state prosecution. This unusual strategy might suggest a designed plan of forcing the government to request the severance, thereby helping to preserve defendant's speedy trial claim. Had defense counsel himself requested a severance due to Gambino's conflicting state trial, as one would ordinarily expect him to do, the speedy trial clock might have been indefinitely tolled. *Cf. United States v. Fernandez*, 694 F.Supp. 858, 860–61 (S.D.Fla. 1988) (defendant's assertion of his right to severance a factor weighing heavily in favor of excluding three to four year delay arising in part from severance). Nonetheless, we do not think the failure to ask for a severance supports a finding of waiver. Even viewed as strategy, its chances of success were remote. The government could have sought an order of excludable delay under § 3161(h)(1)(D) of the Act, thereby obtaining the exclusion of "delay resulting from trial with respect to other charges against the defendant." *Id.*

■ The second instance of pretrial conduct potentially supporting a finding of waiver was cited by the trial court. The government asserts without contradiction that Gambino requested that his case be calendared after the summer of 1992, in effect seeking the very delay of which he now complains. 818 F.Supp. at 544. However, it appears that Gambino made this calendaring request to the prosecutor, not to the court; nor does it appear that the court was even informed of defense counsel's calendaring preference until February 1993, well after the alleged date of violation had passed. Thus, we are unable to conclude that this request amounts in

itself to *Pringle*-type conduct, "lulling *the court* and prosecution into a false sense of security." 751 F.2d at 434–35 (emphasis added).

■ In sum, a review of the record fails to uphold the trial court's view of Gambino's counsel's conduct. Absent a finding that defense counsel's deliberate pretrial strategy of delay and his disclaimer of any speedy trial problems preceded the government's violation of the Act, there can be no holding that such conduct amounted to waiver.

■ 4. *Addition of New Co–Defendants.* An alternative ground was advanced by the district court for refusing to dismiss the indictment. The Act permits a "reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). Thus, the speedy trial clock in cases involving multiple defendants begins with the running of the clock for the most recently added defendant. *See United States v. Pena,* 793 F.2d 486, 489 (2d Cir. 1986); *United States v. Piteo,* 726 F.2d 50, 52 (2d Cir.1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 156 (1984). This rule promotes judicial efficiency by allowing the prosecution flexibility in the combining of criminal trials. *See Pena,* 793 F.2d at 489. The only inquiry made in such multiple defendant cases is whether the delay is "reasonable." *See, e.g., United States v. Tobin,* 840 F.2d 867, 869–70 (11th Cir.1988) (looking to "totality of the circumstances prior to trial" in concluding delay reasonable to achieve joint trial).

Under the circumstances of this case the belated joinder of new co-defendants took place too late to reset the appellant's speedy trial clock. Appellant's case was joined with those of Loscalzo and Giuseppe Gambino in the superseding indictment only *after* the challenged delay. We are unable to identify any cases holding that joinder effectively resets a defendant's speedy trial clock to zero after that defendant's speedy trial right has already been violated by delay. Such a result, moreover, would open the door to prosecutorial abuse, permitting 70–day extensions to be unilaterally obtained by means of sequentially indicting co-defendants.

In sum, none of the justifications proffered by the government or the district court adequately excuses the delay in bringing Gambino to trial. The district court erred therefore in not finding that the Speedy Trial Act was violated.

*C. Harmless Error*

■ We proceed to consider whether such error was harmless. As a preliminary matter, we must determine what relief the district court ought to have granted, once a violation of the Act occurred. If a criminal defendant is not brought to trial within 70 non-excluded days from the filing of an indictment, the mandatory remedy provided by the Act is dismissal of the indictment on motion of the defendant, although the court may, within its discretion, dismiss the case without prejudice. 18 U.S.C. § 3162(a)(2). Once an indictment has been dismissed under the Act, any resultant conviction must be overturned, and the defendant may be retried only upon the obtaining and filing of a new indictment. *United States v. Perez–Reveles,* 715 F.2d 1348, 1353 (9th Cir.1983); *United States v. Antonio,* 705 F.2d 1483, 1486–87 (9th Cir.1983).

■ At issue here is what relief is available to a defendant when the original indictment's time on the speedy trial clock has run out, but in the meanwhile a superseding indictment has been filed by the time defendant moves for dismissal of the original indictment. The government contends that in such a situation, the defendant is entitled only to dismissal of the original indictment, that is, since he has already been reindicted, to no relief at all. We disagree. A superseding indictment inherits the clock of the original, *see United States v. Roman,* 822 F.2d 261, 265–66 (2d Cir.1987), so that any violation of the original is imputed to it, and consequently it is the later indictment that must be dismissed.

■ Nor should dismissal somehow resurrect any preceding indictment. Although the relief originally requested by Gambino was only dismissal of the superseding indict-

ment with reinstatement of and trial upon the original, that is not the remedy provided for by the Act. The government violates the Act at its peril. Forcing the government to reindict a defendant after a Speedy Trial Act violation may seem a "purposeless formalism," 818 F.Supp. at 548, but it is the sanction Congress saw fit to impose, and it was therefore the district court's duty to impose it.

We recognize that the district court said that had it dismissed the indictment, it would have done so without prejudice. In so ruling, the court correctly applied the statutory factors governing prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Given the seriousness of Gambino's crime and the sedulity of the prosecution, the court correctly concluded that dismissal with prejudice would not have been warranted. 818 F.Supp. at 547–48. Certainly, Gambino's counsel's post-violation statement, "Our case doesn't present any speedy trial problems," 818 F.Supp. at 544, supports the conclusion that no prejudice was felt.

Given dismissal without prejudice, the government would have been free to seek to have Gambino reindicted; and even the appellant now concedes that reindictment would have been inevitable. As the government had already managed in fact to indict Gambino a total of three times on virtually identical charges, see 818 F.Supp. at 542–43, we may comfortably assume that a fourth indictment would have been readily forthcoming. Thus, Gambino's position today would be no better even if the district court had dismissed the superseding indictment.

We conclude, accordingly, that the error was harmless, and that Gambino's conviction must stand. Nonetheless, we hasten to add that our holding is not a signal that affirmance of a district court's failure to dismiss an indictment on harmless error grounds, so long as a "without prejudice" analysis is undertaken as mandated by the Act, will routinely follow. On the contrary, since we review the question of prejudice de novo, non-

dismissal in the event of a violation will always risk nullifying an entire trial. Reversible error, in a case as complex and hardfought as this one, would have been costly indeed.

## II  NONDISCLOSED EVIDENCE

### A.  *Gravano's Testimony and His Alleged Perjury*

The trial of Thomas and Giuseppe Gambino began on April 19, 1993, Loscalzo's trial having been severed due to his poor health. A key part of the government's case was the testimony of Salvatore Gravano, who was originally indicted with appellant, but later cooperated with the government at a series of criminal trials involving various members of the Gambino organization. Aside from Gravano's crucial testimony, the bulk of the government's case consisted of circumstantial evidence obtained from electronic surveillance of the Gambino organization's operations. All the proof presented was extensively reviewed by the district court in a published opinion, *United States v. Gambino*, 835 F.Supp. 74, 77–85 (E.D.N.Y.1993) (denying Thomas Gambino's motion for a new trial). Gravano's testimony, according to the district court's assessment, connected only Thomas Gambino with the Connecticut loansharking operation, thus tending to exonerate Giuseppe Gambino. *Id.* at 83–85. The surveillance evidence against Thomas Gambino was also markedly more substantial than that against Giuseppe Gambino. *Id.* at 77–81.

On May 11, 1993 the jury acquitted Giuseppe Gambino and convicted appellant Thomas Gambino. The next day, in a separate case, *United States v. Conte*, No. 93 CR 85 (ILG) (E.D.N.Y. guilty plea entered June 20, 1994), the government submitted a letter (the *Conte* letter) to the district court in support of its motion to detain defendant Pasquale Conte pending trial. The letter disclosed that Gravano had engaged with Conte—another captain in the Gambino organization—in a conspiracy to import and distribute heroin. As a result of this disclosure, Gambino filed a motion for a new trial on the basis of newly discovered evidence tending to

impeach the credibility of a government witness.

Following oral argument on this motion on October 6, 1993, appellant alerted the court to the existence of additional newly discovered impeachment evidence. During pretrial discovery in yet another Gambino organization case, *United States v. Crea*, 853 F.Supp. 72 (E.D.N.Y.1994), defense counsel had received materials developed in 1989 from electronic surveillance conducted by the Kings County District Attorney's Office and the Federal Bureau of Investigation (FBI) at a construction trailer on 64th Street in Brooklyn, New York. Included among these materials was a transcript of witness Gravano instructing an associate in the art of testifying falsely to a grand jury (the Trailer Tape):

> You're called to the grand jury. You gotta take the fifth. Alright so far? Now they give you immunity. What do you do?
>
> *       *       *       *       *       *
>
> Now I told him there is three things: common sense, common sense is one part, seventy-five percent of the answers. Another ten or fifteen percent ... (inaudible) you gotta dance and bob and weave. One, I didn't remember, I don't think so, or to the best of my knowledge. Okay? Let's say fifteen percent, so that's seventy-five percent, so we're up to ninety percent. Ten percent, you out and out lie.

Gambino's counsel claimed that because the FBI assisted in the investigation in which the Trailer Tape was obtained, the government obviously knew of its existence and was obligated to turn it over to Gambino as exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government submitted responding affidavits stating that none of the Assistant United States Attorneys who worked on the prosecution of Gambino or any related cases were aware of the existence of the Trailer Tape before being alerted to it by defense counsel.

Gambino moved under Rule 33 for a new trial "in the interests of justice" on the grounds that the government's failure to disclose this newly discovered exculpatory *Brady* material entitled him to such relief. Fed.

R.Crim.P. 33. The district court on October 26, 1993 denied the motion. 835 F.Supp. at 96. Appellant appeals from the denial of this motion.

### B. *Motion for a New Trial*

Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict. *See United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982). The trial court has "broad discretion" to decide Rule 33 motions based upon its evaluation of the proof produced, *see United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992), and its ruling is deferred to on appeal because, having presided over the trial, it is in a better position to decide what effect the newly discovered materials might have had on the jury, *see United States v. Petrillo*, 821 F.2d 85, 88 (2d Cir.1987). This is particularly true where, as here, the outcome of the trial depended upon a complicated conglomeration of surveillance evidence regarding the structure of a vast criminal conspiracy.

The district court summarized the extensive evidence upon which Gambino's conviction was based in its exhaustive published opinion. 835 F.Supp. at 77–85. Appellant's appeal hinges in large part on attacking the soundness of that court's assessment of the trial evidence. We will not disturb a trial court's factual findings regarding the nature and weight of the evidence, unless those findings are clearly erroneous. *See United States v. Diaz*, 922 F.2d 998, 1006 (2d Cir.1990), *cert. denied*, 500 U.S. 925, 111 S.Ct. 2035, 114 L.Ed.2d 119 (1991).

#### 1. *The* Conte *Letter*

The *Conte* letter implicates Gravano in narcotics trafficking. The letter detailed Gravano's attempt, at the request of John Gotti, to obtain from Conte some of the proceeds from his heroin importing schemes; the attempt never achieved fruition because of the intervening arrests of Gravano and Gotti. Plainly this letter is *Brady* material that tends to impeach the credibility of a

government witness and, as such, it should have been made available to the defense in appellant's trial. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Nevertheless, information not disclosed to the defense creates constitutional error warranting a new trial only when that information is material, *i.e.,* when it "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976). To determine whether a defendant was deprived of his due process right to a fair trial, the court must evaluate the omission in the light of the entire record: "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* at 112–13, 96 S.Ct. at 2402. In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court restated the *Agurs* test for deciding whether nondisclosed impeachment evidence is "material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* at 678, 105 S.Ct. at 3381. It explained that materiality exists "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3383.

Recognizing the difficulty of meeting the *Agurs–Bagley* "reasonable probability" standard of materiality, Gambino seeks to invoke a less rigorous test by declaring that the *Conte* letter demonstrates that Gravano committed perjury on the stand. Gravano was not specifically asked and so did not specifically deny that he had ever engaged in drug dealing. It was in earlier Gambino organization trials—at which he appeared as a witness—that Gravano declared that the rules of the Gambino organization prohibited dealing in narcotics. *See United States v. Gotti,* No. 90 CR 1051 (S–I) (ILG) (E.D.N.Y. April 2, 1992); *United States v. Pape,* No. 92 CR 0159 (ILG) (E.D.N.Y. November 6, 1992); *United States v. Orena,* 821 F.Supp. 870, 871 (E.D.N.Y.1993).

When the prosecution knowingly makes use of perjured testimony, the standard for materiality is reduced to a showing of "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397; *see also Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381; *United States v. Stofsky,* 527 F.2d 237, 245 (2d Cir.1975) (without false testimony jury might have reached different result), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976). In the instant case the *Conte* letter—not turned over to defense counsel—contradicted statements regarding the drug business to which Gravano had testified in other trials. Even assuming Gravano perjured himself and assuming perjury in other trials would be relevant to Gravano's testimony in this trial, we do not believe the *Conte* letter material in the constitutional sense. Had defense counsel had access to the letter, we do not believe it would likely have affected the outcome of the trial, or, in other words, that with the letter in evidence Gravano's credibility would have been so diminished that Gambino would not have been convicted.

But we are unpersuaded that any perjury occurred. Gravano had stated under oath in those earlier trials of Gambino organization members that he and the Gambino organization had a principle of not dealing in drugs. Yet, that policy statement is not flatly inconsistent with his having become involved on his own, and John Gotti's, behalf in a heroin importation conspiracy. It is at most evidence that Gravano did not adhere to the rules of the organization of which he was a high-ranking member. Nevertheless, even a direct conflict in testimony does not in itself constitute perjury. *See United States v. Bortnovsky,* 879 F.2d 30, 33 (2d Cir.1989); *see also United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992). Consequently, the lower standard of materiality is not triggered.

The more rigorous *Agurs–Bagley* test applies so that reversal is warranted only if there is a reasonable probability that disclosing the *Conte* letter to the defense would have resulted in a different verdict. That test has not been met. As the district court noted, "Gravano's plea agreement with the government and his criminal past were dis-

sected and laid before the jury on cross-examination—a criminal past which included nineteen murders, labor racketeering, extortion, shylocking, obstruction of justice and gambling." 835 F.Supp. at 88. Proof before the jury that this witness was involved in an abortive conspiracy to import heroin and that he violated the policies of his own organization would scarcely have rendered his gloomy past worse.

■ Nondisclosure of cumulative evidence tending only to further impeach a witness' general credibility is not grounds for granting a Rule 33 motion. *See United States v. Helmsley,* 985 F.2d 1202, 1210 (2d Cir.1993); *United States v. White,* 972 F.2d 16 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 669, 121 L.Ed.2d 593 (1992). Moreover, the district court's finding—based on its thorough review of the evidence—that Gambino's conviction rested on a sound evidentiary basis exclusive of Gravano's testimony, is a factual finding entitled to deference on appeal. The proof of this witness' additional wrongdoing revealed in the *Conte* letter therefore provides no basis for disturbing the jury's verdict.

In light of this holding we need not decide the questions of whether a defendant may obtain the advantage of the less burdensome standard simply by showing that a government witness has given perjured testimony at related trials; or whether, as the government urges, defense counsel had access to the essential facts of Gravano's drug involvement so that the *Conte* letter was not "suppressed." *See United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993); *United States v. Esposito,* 834 F.2d 272, 275 (2d Cir.1987); *United States v. Gaggi,* 811 F.2d 47, 59 (2d Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

### 2. *The Trailer Tape*

■ We turn now to a consideration of the second alleged *Brady* violation, the suppression of the Trailer Tape transcript. The Trailer Tape is quintessential *Brady* material. Rarely does a defense attorney have such a useful weapon for attacking the credibility of a government witness. Gravano is recorded on the Trailer Tape as giving this direct instruction for confounding a grand jury: "Ten percent of the time, you out and out lie."

But in this case defense counsel had other weapons ready at hand. As already noted, Gravano was cross-examined at length and with "surgical precision," 835 F.Supp. at 88, about his extensive criminal history. Defense counsel referred to Gravano in his opening statement as a "serial killer" who had "participated in the slaughter and deaths of nineteen human beings." Gravano committed at least two of those murders in order to prevent the victims from testifying before a grand jury, and he admitted other acts of obstructing justice, including bribing jurors, in an attempt to frustrate the prosecution of Gotti. 835 F.Supp. at 95. With this grim history laid before them, the jury had a fair opportunity to evaluate the witness' credibility. The existence of the Trailer Tape does nothing to undermine confidence in Gambino's conviction, nor to suggest any "reasonable probability" that the jury would have reached a different verdict had the transcript been available to them. The Trailer Tape does not therefore amount to material evidence the suppression of which would warrant a new trial.

Finding a lack of materiality, we need not decide whether the Trailer Tape was "suppressed," in other words, whether the knowledge of the tape's existence should be imputed to the prosecution, based on its having been available to the F.B.I. in 1989. Nonetheless, it should be noted that we recently addressed this precise question in the context of Gotti's and Locascio's *Brady* appeal—also predicated on nondisclosed evidence tending to impeach Gravano—holding "[w]e will not infer the prosecutors' knowledge simply because some other government agents knew about the report." *United States v. Locascio,* 6 F.3d 924, 949 (2d Cir. 1993) (citing *Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984) and *United States v. Quinn,* 445 F.2d 940, 944 (2d Cir.) (holding that knowledge on the part of one arm of government does not imply knowledge by the prosecutor), *cert. denied,* 404 U.S. 850, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1645, 128

L.Ed.2d 365 (1994). Crediting the government's affidavits, the trial court found in addition as a factual matter that the prosecution in Gambino's case did not know of the Trailer Tape's existence.

It thus appears that there existed an adequate basis in law and fact for the finding that the Trailer Tape was not "suppressed." This finding is not however essential to our holding, which is based solely on the non-materiality of the tape as constituting cumulative impeachment evidence. Consequently, we rule that the nondisclosure of the Trailer Tape does not amount to suppression of material evidence warranting a new trial.

## III  SCOPE OF RE–DIRECT EXAMINATION

### A.  *Agent Gabriel's Testimony*

The final issue relates to the propriety of the prosecutor's re-direct examination of a government witness. George Gabriel, an FBI agent qualified as an expert witness on the structure and methods of organized crime organizations, took the stand to interpret the tape recordings obtained in the course of electronic surveillance. The agent described the structure of the Gambino organization and the procedure by which the joint FBI and New York State Organized Crime Task Force investigation conducted surveillance of the Bergin Hunt & Fish Club in Ozone Park, Queens, New York—a Gambino organization haunt. He then reviewed the tape recordings with the jury, identifying cryptic references to organization members and their criminal activities.

Cross-examination of the agent by defense counsel elicited the facts that earlier surveillance tapes made in 1983 and 1989–90, as well as an earlier search of Gambino's office, had failed to reveal any evidence connecting him with loansharking or organized gambling. In fact, those tapes had implicated appellant in unrelated offenses concerning the garment industry, and had resulted in his entering a guilty plea in a previous New York State proceeding. The earlier tapes had already been ruled inadmissible in the instant case. But by the fact that they had been made, defense counsel was able to suggest that the government had made Gambino the target of lengthy, fruitless, harassing and perhaps illegal surveillance.

The trial court believed this cross-examination was designed to deceive and mislead the jury. Hence, it ruled that the prosecution would be permitted on re-direct to attempt to dispel any misconceptions created by this line of questioning. The government was prohibited from developing the fact that previous investigations against Gambino had resulted in his guilty plea in a state proceeding, even though the cross-examination had opened the door for proof respecting such prior conviction. The scope of re-direct instead was limited to demonstrating that the earlier surveillance was not illegal, oppressive, unjustified, or targeted solely against Gambino.

On re-direct the agent stated the earlier investigations had resulted in 11 other indictments involving 30 defendants. He also testified that 12 or 13 persons had already been convicted as a result of those tapes, with further indictments anticipated. Defense requests to cure the prejudicial impression of this testimony by informing the jury that Gambino had been acquitted in one of the cases resulting from the earlier series of tapes were denied. But the trial court—with the approval of defense counsel—gave the jury the following limiting instruction:

> I want to make it just as clear as I can possibly make it whether there were convictions with respect to investigations pertaining to other persons has no bearing upon this case.

> The determination which the jury will make in this case will be predicated solely upon the evidence as it is presented in this case, and no inference should be drawn by the jury regarding these defendants from the fact that in other cases other persons may have been convicted.

Giuseppe Gambino's counsel, by contrast, in questioning the agent was allowed to enquire whether his client had been prosecuted in any of the previous investigations, and obtained an answer that he had not. Appellant's counsel did not object to this testimony.

After the conclusion of the agent's testimony, defense counsel requested that the agent be recalled in order to elicit the fact of Gambino's former acquittal. This request was denied. Gambino contends on appeal that his conviction should now be reversed because of the unfair prejudice resulting from these evidentiary rulings.

## B. *Admission of Corrective Testimony*

A district court has broad discretion to make a determination that the probative value of evidence outweighs the risk that its admission will result in unfair prejudice. *See United States v. Moon,* 718 F.2d 1210, 1233 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). Evidentiary rulings are not grounds for reversal except where they are made arbitrarily or irrationally. *See United States v. Blanco,* 861 F.2d 773, 781 (2d Cir.1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1139, 103 L.Ed.2d 200 (1989). Otherwise inadmissible testimony may be received on re-direct in order to rebut a false impression created by an opposing party during cross-examination. *See United States v. Rosa,* 11 F.3d 315, 335 (2d Cir.1993); *United States v. Wiley,* 846 F.2d 150, 156 (2d Cir.1988). Defense counsel's cross-examination here was deliberately designed to foster a false impression in the jury's mind that for years the government had been unsuccessfully and abusively investigating Gambino. It was this misimpression that the prosecutor was allowed to correct on re-direct by asking the agent about the legality and success of the former surveillance operations.

Appellant contends this corrective attempt may have persuaded the jury that he was one of the unnamed persons convicted as a result of the earlier investigations. In allowing the jury to form such a belief, he insists, the court improperly infringed his due process right "to be tried solely on the basis of evidence presented to the jury." *United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985). We recognize that evidence of a defendant's prior conviction is inadmissible unless it relates to a disputed issue and unless, further, its probative value outweighs its prejudicial effect. Fed.R.Evid. 403, 404(b); *United States v. Figueroa,* 618 F.2d 934, 939 (2d Cir.1980).

We reject the notion that admitting this corrective testimony was an abuse of discretion. Under the circumstances, the trial court might well have been justified in allowing the introduction of evidence pertaining to Gambino's earlier guilty plea. But it did not. Rather, the scope of the government's questioning was carefully circumscribed, and the jury was promptly given a limiting instruction, approved by Gambino's counsel, as to what inferences could be drawn from those facts. Moreover, even if it were error to admit this proof, such error would have been harmless in light of the overwhelming record evidence of Gambino's guilt. *See United States v. DeVillio,* 983 F.2d 1185, 1195 (2d Cir.1993); *United States v. Lasanta,* 978 F.2d 1300, 1306 (2d Cir.1992).

## CONCLUSION

Accordingly, for the reasons stated the judgment of conviction is affirmed.