101 F.3d 1394
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Vorna McBEAN, also known as John, Defendant-Appellant,
v.
UNITED STATES of America, Appellee.
 No. 95-1690.
 United States Court of Appeals, Second Circuit.
 Aug. 21, 1996.
 
 Appearing for Appellant: Joseph W. Gibson, Miami, FL.
 Appearing for Appellee: Daniel S. Dorsky, Assistant U.S. Attorney, E.D.N.Y., New York, NY.
 E.D.N.Y.
 AFFIRMED.
 Present MESKILL, CALABRESI, PARKER, Circuit Judges.
 
 ORDER
 
 1
 At Vorna McBean's trial, evidence was introduced to the following effect. On December 21, 1994, Charlene Willis and Audrey Simpson flew from New York to Montego Bay, Jamaica, with the understanding that they were to act as drug couriers for one John O'Connor. Defendant McBean picked them up at the airport. On December 27, 1994, McBean provided Willis and Simpson with a bag that contained orange juice and balloons filled with cocaine. Both Willis and Simpson began to swallow the balloons. According to Willis, when Simpson could not swallow any more balloons, McBean stood behind Simpson and pointed his fingers behind her head in the shape of a gun. Willis further stated that she swallowed more balloons thereafter because she was fearful that McBean would hurt Simpson. Willis and Simpson flew back to the United States later that day, and were arrested in John F. Kennedy airport. On January 13, 1995, O'Connor's stepfather sent an express mail package from Middletown, New York to McBean in Montego Bay. O'Connor told Willis six days afterwards that he had sent money to McBean for the cocaine. On January 19, 1995, Willis told O'Connor in a taped telephone conversation that she had swallowed additional balloons for more money.
 
 
 2
 On May 22, 1995, after he had returned to the United States, McBean was arrested in Miami International Airport as he was preparing to depart for Jamaica. McBean then signed a consent form that allowed the agents making the arrest to search his baggage. After being read his Miranda rights, McBean was asked if he knew the reason for his arrest. He stated that he believed that it was related to his friend Terry Weston; "Terry" is O'Connor's alias in Jamaica. McBean further admitted that he had met two women in Jamaica, one of whom was named Charlene, and that these two women had stayed at his house. At trial, evidence was also presented indicating that McBean and O'Connor had had phone conversations.
 
 
 3
 Defendant makes two contentions on appeal.* He first maintains that the district court erred in not compelling the prosecution to correct an allegedly false statement made by a government witness. He notes that Willis testified at trial that she swallowed additional balloons filled with cocaine because she was fearful that the defendant would hurt her companion, Simpson, if she did not do so. The defendant avers that the government knew this testimony to be false because Willis had previously stated on tape to O'Connor that she had swallowed the additional cocaine pellets for extra money.
 
 
 4
 This argument fails for three reasons. First, the prosecution had provided the defendant with the relevant tape before trial. The district court judge therefore correctly found that the defense "was aware of, and able to develop on cross, the witness's financial motives for joining in the drug scheme." Second, because Willis's two explanations for why she swallowed more balloons are not mutually exclusive, it is not clear that the government thought that Willis's statements at trial were untrue. Finally, even assuming that the government made conscious use of perjured testimony, the defendant has not made a case for a new trial. A court confronted with knowing use of perjured statements must ask whether there was "any likelihood that the false testimony could have affected the judgment of the jury." United States v. Gambino, 59 F.3d 353, 365 (2d Cir.1995), cert. denied, 116 S.Ct. 1671 (1996) (citation and internal quotation marks omitted). In this case, there clearly was not. The reason Willis swallowed the pellets, whether money or fear, is irrelevant to McBean's guilt except insofar as it impugns the credibility of Willis' other testimony. The jury, however, had overwhelming evidence (quite apart from Willis' testimony) of McBean's guilt, including the testimony of Simpson, McBean's post-arrest statements about "Terry" and "Charlene," and evidence of telephone calls between O'Connor and McBean.
 
 
 5
 The defendant also alleges that the district court erred because it allowed the government to misstate the record in its closing argument. The defendant contends that the prosecution asserted that a postal express mail package, sent on January 13, 1995 from O'Connor's stepfather to McBean, contained a money order. There is nothing in the record to indicate what the package held.
 
 
 6
 The defendant has not shown that the prosecutor's misconduct, if any, resulted in prejudice to him. This circuit has adopted a three-prong test to determine whether a prosecutor has caused substantial prejudice to the defendant. Under the test, we consider: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the improper statements. United States v. LaMorte, 950 F.2d 80, 83 (2d Cir.1991), cert. denied, 504 U.S. 909 (1992). Here the misconduct was not severe. For example, after he had stated that "the postal money order is sent," the prosecutor immediately corrected himself by saying "the postal letter is sent." Second, measures were taken to cure the alleged misconduct. Thus, the judge explicitly cautioned the jury that "if the lawyers say anything that does not comport with your own recollection of the evidence, you are, of course, free to disregard it." Finally, the mass of evidence supporting the conviction, as noted above, shows that McBean would have been convicted quite apart from the possibly improper statements made by the prosecution.
 
 
 7
 We have examined all of McBean's contentions, and find them to be without merit. The district court's judgment is therefore affirmed.
 
 
 
 *
 A third contention, that the search violated the Fourth Amendment, was withdrawn at oral argument