294 F.Supp.2d 246 (2003)
UNITED STATES of America
v.
Anthony WASHINGTON
No. 3:02CR146 (JBA).
United States District Court, D. Connecticut.
December 15, 2003.
*247 Roger H. Sigal, Federal Public Defender's Office, New Haven, CT, Sarah A. Chambers, Natick, MA, for Defendant.
*248 James I. Glasser, John H. Durham, Keith A. King, U.S. Attorney's Office, New Haven, CT, John A. Danaher, III, U.S. Attorney's Office, Hartford, CT, for Plaintiff.

Ruling on Government's Motion for Reconsideration of Ruling on Defendant's Amended Motion for New Trial [Doc. # 104]
ARTERTON, District Judge.
On May 15, 2003, this Court vacated defendant Anthony Washington's conviction and ordered a new trial, pursuant to Fed.R.Crim.P. 33. See United States v. Washington, 263 F.Supp.2d 413 (D.Conn. 2003). The ruling was based alternatively on the late disclosure of the previous conviction of Joseph McNeil ("McNeil"), the Government's key witness, for making a false police report, and on prosecutorial misconduct in the cross-examination of the defense's key witness, in the summation, and in rebuttal summation. For the reasons discussed below, the motion for reconsideration is granted, and upon reconsideration, the Court reaffirms its previous holding finding the prejudicial suppression of evidence favorable to defendant. Because this Brady violation, see Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), provided a sufficient basis to grant defendant's new trial motion, the Court finds that reconsideration of the claim of prosecutorial misconduct in light of the Government's now fully developed arguments[1] is unnecessary as this claim no longer forms the basis for the Court's ruling.
The Court assumes the reader's familiarity with its earlier ruling, see Washington, 263 F.Supp.2d 413, and with the underlying factual and legal background of this case, and turns directly to the Government's arguments on reconsideration.

I. Standard
A Court may reconsider a prior decision in the same case if "there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." U.S. v. Sanchez, 35 F.3d 673, 677 (2d Cir.1994) (citing United States v. Adegbite, 877 F.2d 174, 178 (2d Cir.), cert. denied, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989); United States v. Yonkers Board of Education, 856 F.2d 7, 11 (2d Cir.1988)). Here, the Government has argued that this Court's May 15 ruling was incorrect as a matter of law, and that reconsideration is necessary to prevent injustice.[2]

II. Discussion
In support of its motion for reconsideration, the Government contends that its failure to disclose McNeil's prior conviction was "neither willful nor intentional suppression of evidence, nor gamesmanship at play." See Gov't. Mem. Supp. Mot. Recons. [Doc. # 106] at 12-13. The Court's earlier opinion expressed no such belief, only concern that without *249 prosecutorial oversight, case agents become improper and inadequate substitutes. Although the Court recognizes that the Government has now described at length the circumstances under which the impeachment evidence had been overlooked until the completion of the first day of trial, and that no bad faith is evident, the Court's earlier decision made clear that the "prosecutor's good faith or lack of bad faith is irrelevant" to the determination of whether a Brady violation occurred, where prejudice to the defendant has ensued from the suppression of favorable evidence. Washington, 263 F.Supp.2d at 421 (citing Leka v. Portuondo, 257 F.3d 89, 99-100 (2d Cir.2001)).
The Government also argues that the disclosure of the impeachment evidence after trial began did not prejudice the defendant, because when the evidence was discovered after the first day of trial, "the underlying details of McNeil's conviction were in fact agreed to, introduced, and used by the defense at trial to attack McNeil's credibility and character for truthfulness." Gov't Mem. L. Supp. Mot. Recons. [Doc. # 106] at 14. In particular, the Government contends (a) that defense counsel failed to perceive at trial any prejudice to the defendant; (b) that all relevant facts underlying McNeil's prior conviction were revealed to the defendant and used at trial by defense counsel; and (c) that, as a matter of law, prejudice cannot be found if the defense used the Brady material at trial. The Court finds each of these arguments unpersuasive.
First, the Government's argument that defense counsel did not perceive any prejudice at trial not only fails to alter the Court's prejudice calculation, but underscores it precisely because what can be perceived in the heat of a short, aggressively prosecuted trial may be far different from pre-trial development of evidence and appreciation of how it may be effectively integrated into an overall trial strategy. In its original ruling, this Court considered the fact that by receiving the impeachment material after the first day of trial, defense counsel was also unable to immediately mitigate the impact on the jury of the crucial 911 tapes by impugning the truthtelling character of the caller (McNeil), or more effectively impeach prosecution witness Danielle Soradi when she first testified, and found resulting prejudice to the defendant. The Government challenges this conclusion by pointing to the fact that defense counsel "did not object, or request a continuance or a mistrial, or even claim a Brady violation" once the information about McNeil's prior conviction was disclosed, and that the defense agreed to the stipulation as to McNeil's conviction. The Government also asks the Court to view defense counsel's failure to introduce the stipulation as to McNeil's prior conviction until late in the second trial day, and defense counsel's initial neglect to use the conviction to cast doubt on prosecution witness Danielle Soradi's ("Soradi") claimed familiarity with McNeil, as evidence that defense counsel did not find the late disclosure to be prejudicial, as opposed to an indication that defense counsel failed to immediately appreciate the degree of prejudice at the time.
The Court disagrees that defense counsel's perceptions or performance at trial should control a determination of whether prejudice occurred. It cannot be doubted that the late disclosure of material evidence disrupts a prepared trial strategy. As Leka counsels, when the information is disclosed after trial is already under way, the "the defense may be unable to assimilate the information into its case." Leka, 257 F.3d at 101. Indeed, "[t]he opportunity for use under Brady is the opportunity for a responsible lawyer to use the information with some degree of calculation and forethought." Id. at 103. Thus, rather than signaling a lack of prejudice, the fact *250 that defense counsel did not immediately pick up on the full value of the impeachment evidence to his case seems itself to be indicative of the prejudice of the late disclosure.
Second, the Government's argument that the defense was able to make fully effective use of the impeachment material, such that additional or earlier uses of the information would be merely cumulative and insufficient for a finding of prejudice, fails both factually and as a matter of law. The Court earlier noted that defense counsel might have further impeached McNeil's credibility as to both motive and veracity through presentation of extrinsic evidence of the underlying details of McNeil's conviction, i.e. circumstances under which he falsely blamed others to avoid responsibility for his own misconduct. See Washington, 263 F.Supp.2d at 423 (quoting U.S. v. Friedman, 854 F.2d 535, 570 n. 8 (2d Cir.1988)). In disputing this conclusion, the Government argues that the police report disclosed to the defense after the first day of trial included all relevant facts about the circumstances under which McNeil made a false report. The Government also focuses on the fact that defense counsel made use of the fact of McNeil's prior conviction, as the stipulation about the conviction was introduced into evidence, the defense recalled Soradi to the stand and asked her about this conviction, and defense counsel referred repeatedly to this prior conviction in his summation. Thus, according to the Government, any further use of this information would be cumulative, and insufficient grounds for granting a Rule 33 motion. See Gov't Mem. L. Supp. Mot. Recons. [Doc. # 106] at 20 (citing United States v. Gambino, 59 F.3d 353, 366 (2d Cir.1995); United States v. Avellino, 136 F.3d 249, 257 (2d Cir.1998)).
The Government's reliance on Gambino and Avellino is misguided, for these cases are concerned not with the prejudice caused by late disclosure, but with the predicate question of whether impeachment evidence that itself is merely cumulative is material to the defense. See Gambino, 59 F.3d at 366; Avellino, 136 F.3d at 257. Here, there is no dispute about whether the late-disclosed impeachment evidence was material to Washington's defense, as in fact this evidence provided the central means by which the defendant could impeach the Government's deceased key witness, whose only testimony was the 911 call. The issue before the Court, therefore, is whether the defendant was able to fully and effectively use this acknowledged Brady material. Defense counsel's inability to investigate the circumstances of this conviction for false reporting before the start of trial, plan his overall trial strategy based on the investigative results, and his resulting inability to fully or effectively exploit the underlying facts of the conviction beyond the generalized credibility arguments, was, in the Court's view, prejudicial to this defendant, in the context of this short and weak case. Contrary to the Government's assertion that all relevant underlying facts were contained in the police report and available to defense counsel at trial, McNeil's motive for making the false statement to police is not evident, and only became clear after the defense's follow-up investigation. This motive arguably parallels and could have buttressed the defendant's theory of why McNeil might have been motivated to lie in his 911 call. See Washington, 263 F.Supp.2d at 423-24. Because a determination of whether McNeil's prior conviction casts doubt on the reliability of his 911 call must take into account how "`the circumstances of the past conduct'" compare "`with those surrounding the hearsay statements admitted into evidence,'" id. at 423 (quoting U.S. v. Friedman, 854 F.2d at 570), the Court disagrees with the Government's *251 characterization of the possible additional uses of the evidence as "cumulative." Gov't Mem. L. Supp. Mot. Recons. [Doc. # 106] at 20.
Finally, there is no per se rule in the Second Circuit that prejudice cannot occur if the defense was able to use the late-disclosed evidence at trial. To the contrary, the Second Circuit's caselaw clearly establishes that a Court must look to "the sufficiency, under the circumstances, of the defense's opportunity to use the evidence." Leka, 257 F.3d at 100. Thus, the Second Circuit considers whether the disclosure was made in time "to allow for full exploration and exploitation by the defense." Id. at 101 (emphasis added). In fact, the Leka Court clearly envisioned that prejudice might be found even if the late-disclosed material was used at trial, as Leka favorably cites to a case finding prejudice where the defense in fact used the late-disclosed material at trial. See Leka, 257 F.3d at 102 (citing Blake v. Kemp, 758 F.2d 523, 532 n. 10 (11th Cir. 1985)). This Court's earlier decision, therefore, was fully in accord with Second Circuit precedent, and was in no way an unprecedented expansion of the meaning of prejudice.
As the Court's earlier ruling discussed, in this case the combination of a short trial, weak Government evidence, and an overbearing prosecutor provided the context in which the claimed existence of prejudice caused by the late-disclosed material has been evaluated. This "was hardly a case where the evidence against Washington was overwhelming," Washington, 263 F.Supp.2d at 439, as the Government's key witness, Joseph McNeil, had died before trial, and a tape recording of McNeil's 911 telephone call provided the only substantive evidence of Washington's possession of the firearm. The impeachment evidence was critical in this context. The earlier presentation of this evidence to the jury might have mitigated somewhat the impact of the 911 tape, and a fuller exploitation of the underlying facts of McNeil's prior conviction could have made the defense's theory of its case more plausible.
The buttressing of the Government's evidentiary deficiencies by its improper comments on cross-examination and summation augmented the potential for prejudice in the Court's view. While the Court's May 15 decision included two "alternative" holdings, id. at 416, upon reconsideration, the Court finds that the prejudice from the Brady violation constitutes a fully sufficient basis for granting defendant's Rule 33 motion, and therefore, the Court need not reach the issue of whether the prosecutor's excesses constituted "prosecutorial misconduct" in the context of this case.

III. Conclusion
For the foregoing reasons, after reconsideration, the Court grants the defendant's motion for a new trial, based on the Government's Brady violation.
IT IS SO ORDERED.
NOTES
[1] In originally opposing the defendant's Amended Motion for a New Trial, the Government offered a mere two sentences of argument about defendant's claim of prosecutorial misconduct during closing and rebuttal argument, and never addressed the issue of personal vouching. See Gov't. Resp. Def.'s Mot. New Trial. [Doc. # 92] at 14.
[2] The Government offers no explanation for why its affidavits describing the circumstances of its admitted late disclosure of Brady material could not have been submitted with its original memorandum of opposition. Perplexingly, given the Government's perfunctory treatment of the prosecutorial misconduct claims, see supra note 1, and its now vastly expanded response to the Brady claims, it appears that defendant's motion for a new trial was not given serious consideration by the Government until after the motion was granted.