**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Martin R. KUCIK, Defendant–Appellant.**

**No. 89–2569.**

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1990.
Decided July 30, 1990.

John F. Hartmann, Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

James F. Young, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Martin R. Kucik has been tried three separate times on charges that on four days in April 1982 he stole a series of cashier's checks from a federally insured bank through a check-kiting scheme. The first trial resulted in a guilty verdict, which was overturned by this Court on the basis of faulty jury instructions. *United States v. Kucik*, 844 F.2d 493 (1988). The second trial was declared a mistrial after the jury could not reach a verdict. The government's third prosecution produced a guilty verdict, but Kucik alleges in this appeal that the government violated the Speedy Trial Act in failing to commence that trial within 70 days of the declaration of mistrial the second time around. Kucik also alleges that during the third trial the district court erred in refusing to give certain jury instructions requested by the defendant, including a particular version of the instruction at issue in our first *Kucik* opinion, and in improperly imposing restitution in the amount of $301,000 as a condition of his sentence. The district court is affirmed on each of the three grounds.

## I.

A lucid description of the important facts and legal implications of the government's case against Kucik is found in our first *Kucik* opinion. The facts relevant to this appeal may be stated briefly. Kucik had two personal accounts, one in the State Bank of Countryside, Illinois (the "bank"), and one in the Credit Union of Local 150 of the International Union of Operating Engineers of Countryside (the "credit union"). The bank was federally insured and the credit union was not. This is significant because 18 U.S.C. § 2113(b), the statute Kucik was convicted of violating, does not cover theft from financial institutions that are not federally chartered or insured.[1]

---

1. Title 18, Section 2113(b) states in relevant part:

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association,

Kucik kited checks in the following manner. He would buy cashier's checks (drawn on the bank's own funds) with share drafts drawn on his credit union account. The credit union account did not have sufficient funds to cover these purchases of cashier's checks. The share drafts did not bounce, however, because before the bank demanded payment by the credit union for the cashier's checks, Kucik had deposited the cashier's checks in his credit union account. Having covered the drafts with the last set of cashier's checks, Kucik considered himself free to go back for more cashier's checks, beginning the cycle anew.

From December 1981 through April 1982, Kucik purchased a total of over $3 million in cashier's checks through this shuffling of one promise (share drafts not backed by Kucik's cash) for another (cashier's checks backed by the bank's pledge to pay). The government sought to prove at trial that in shuffling the checks Kucik also diverted money out of the credit union account instead of recirculating it through the purchase of more cashier's checks. Government witnesses testified that Kucik took more than $300,000 from the credit union account for himself in the course of the check-kiting scheme.

Upon Kucik's conviction in the first trial, Judge Hart sentenced him to three years in prison on count one, to be followed by a five-year term of probation on counts two, three, and four. This sentence did not include any monetary penalty.

This Court reversed the convictions. The Court first showed how even under the government's view of the case, Kucik did not take any money from the bank in the four transactions described in the indictment because the credit union honored the share drafts used in two of the transactions (paying the bank in full) and the bank stopped payment on cashier's checks involved in the other two transactions and was never called upon to pay them. *Kucik*, 844 F.2d at 494–495. Instead, Kucik took from the bank, allegedly by false pretenses, cashier's checks, which were the

shall be fined not more than $5,000 or impris-

bank's "unequivocal, irrevocable" promises to pay the face amounts to any holders in due course. *Id.* at 494–495, 496. The error found by the Court was that Kucik had been denied the chance to have the jury instructed that, under *Williams v. United States*, 458 U.S. 279, 284–285, 102 S.Ct. 3088, 3091–3092, 73 L.Ed.2d 767 (1982), "a check is not a statement that the drawer has funds in his account sufficient to pay it," and therefore the credit union share drafts should not be treated as false pretenses for the purposes of 18 U.S.C. § 2113(b). *Kucik*, 844 F.2d at 498. The government was thus given a chance to retry Kucik, but with a *Williams* instruction. Evidence other than the share drafts themselves would be required to prove false pretenses.

The retrial ended with a declaration of a mistrial on December 15, 1988, on the ground that the jury was deadlocked. The mistrial was declared over Kucik's objection. Upon declaring a mistrial, Judge Norgle continued the case until January 20, 1989. On January 13 Kucik filed a motion for an order allowing him to be provided with a transcript of the second trial at no cost pursuant to 18 U.S.C. § 3006A(e)(1). One week later, on January 20, Judge Norgle granted that motion. The following exchange occurred at the January 20 hearing, with emphasis supplied:

COURT: Have I set a trial date in the case?

GOVERNMENT COUNSEL: No, Judge, one of the things we were going to talk about today is the Government's evaluation of the case, and that's still going on.

COURT: Then with respect to the ordering of [the] transcript we'll stay that until the Government determines whether there will be a third trial.

GOVERNMENT COUNSEL: Well, we'd like another week if possible to finish our discussions.

COURT: All right.

DEFENSE COUNSEL: Judge, excuse me one second. *I have no problem.* I

oned not more than ten years, or both. * * *

just want to get my date book. I'm sorry.

COURT: All right.

DEFENSE COUNSEL: Thank you.

COURT: January 27th at 9:30.

DEFENSE COUNSEL: *Fine, Judge, thank you.*

COURT: For the Government to state its position regarding a third trial.

DEFENSE COUNSEL: Thank you.

On its own motion, the court later reset the January 27 date to February 1.

On February 1, 1989, the government advised the court that it would proceed with a third trial. The district court then set the matter for trial on March 20. The court also ordered that the court reporter prepare the transcript. On February 22, Kucik's counsel picked up and signed a receipt for the second trial transcript.

On March 10, Kucik filed a motion to dismiss the indictment for violation of 18 U.S.C. § 3161(e) of the Speedy Trial Act. The motion tolled the speedy trial period for any further computations. On March 17, the district court issued a minute order denying the motion to dismiss.

At the third trial in May 1989, the district court refused four of Kucik's proposed instructions, including Kucik's version of the *Williams* issue discussed by this Court in the first appeal. The district court used a different version, discussed below. The jury found Kucik guilty of four counts of stealing a total of $581,000 in cashier's checks from the bank in violation of 18 U.S.C. § 2113(b). Each count represented a different transaction on four separate days in April 1982. The district court sentenced Kucik to one year and one day in prison on count one, to concurrent terms of five years of probation on counts two, three, and four, and, as a condition of probation, to pay restitution in the amount of $301,000.

**2.** Section 3161(e) provides in relevant part: If the defendant is to be tried again following a declaration by the trial judge of a mistrial * * *, the trial shall commence within seventy days from the date the action occasioning

## II.

### A.

*Tolling of Speedy Trial Act*

The parties agree that 84 days passed between the time the district court declared a mistrial in December 1988 and the day Kucik filed his speedy trial claim in March 1989. A timely trial would have commenced on February 23, 1989, barring periods of excludable delay. Kucik asserts that this constitutes a violation of 18 U.S.C. § 3161(e)[2] and therefore his indictment must be dismissed pursuant to 18 U.S.C. § 3162(a)(2). As is typical in such cases, the government response uses the statute in the manner of a Chinese menu; the government asserts that any of a series of combinations of excludable periods allowed under 18 U.S.C. § 3161(h) saves its case from a speedy trial violation. The following periods described in Section 3161(h), which the statute directs "shall" be excluded from the elapsed time, are relied upon by the government:

—"[D]elay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(F).

—"[D]elay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." § 3161(h)(1)(J).

—"[D]elay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." This finding must be supported by an oral or written statement by the judge. § 3161(h)(8)(A).

the retrial becomes final. * * * The periods of delay enumerated in section 3161(h) are excluded in computing the time limitations specified in this section. * * *.

Finally, the government points to language in Section 3161(h)(1) to the effect that excludable time "resulting from other proceedings concerning the defendant" includes but is not limited to the specific periods described. Thus the specific periods constitute an inclusive and not an exclusive list.

In September 1989 the district court issued findings in support of its conclusion that the Speedy Trial Act was not violated. R. 174. The court found that the twelve-day delay during which the court withheld the transcript order pending a decision from the government regarding retrial was excludable as a delay in furtherance of the ends of justice pursuant to 18 U.S.C. § 3161(h)(8)(A) because this delay caused no prejudice to Kucik and "was intended to bring to the attention of the prosecution that a third jury trial was arguably inappropriate." R. 174 at 6. The district court further found that: (1) the case was also suitable for an "ends of justice" exclusion under § 3161(h)(8)(A) because of its complexity,[3] *id.;* and (2) the period following Kucik's filing of the motion for a transcript was excludable under § 3161(h) as a pretrial motion, *id.*

There is no need to recite all of the various computations of excludable periods that the government offers for consideration on appeal; one valid application of the statute's exceptions will suffice. We find that two of the exclusions may be applied to justify the delay under the statute. Together, these two exclusions reduce the elapsed time to 65 days, which is within the allowable time.

First, the district court was correct in finding that the seven days between the day on which Kucik filed a pretrial motion for the transcript and the day the court considered that motion in court are excluded under 18 U.S.C. § 3161(h)(1)(F). *United States v. Mentz*, 840 F.2d 315, 327 n. 25 (6th Cir.1988) ("[S]ection 3161(h)(1)(F) speaks in terms of '*any* pretrial motion'") (emphasis in original). Second, the twelve days between the day on which the district court decided to grant the transcript request, contingent upon the government's decision regarding retrial, and the day on which that contingency was met and the transcript was ordered are excluded under 18 U.S.C. § 3161(h)(1)(J).

Congress mitigated the harshness of the Speedy Trial Act with Section 3161(h). The language of Section 3161(h)(1), together with Section 3161(h)(1)(J), requires us to allow an exclusion of time here since the district court specially found that the motion was "under advisement" during the twelve-day period. R. 174 at 6. This contrasts with a case in which the Sixth Circuit found that a discovery motion was not "actually under advisement" for speedy trial purposes because there was "no affirmative evidence in the record that the district court ever considered or ruled on the motion." *Mentz*, 840 F.2d at 328.

*Waiver*

■ Moreover, even if the district court's finding that the transcript request was "under advisement" during the twelve-day period could not be sustained, the highlighted statements of defense counsel given above show that Kucik, through consent of his counsel, waived his right to include those days in a Speedy Trial Act computation.

Various courts of appeals have held that a defendant cannot generally waive his right to a speedy trial under the statute, in part because Congress passed the Act not only for the benefit of criminal defendants, but also out of concern for the interest of the public in seeing that justice is done without great delay.[4] *United States v.*

3. Following remand by this Court, but before the second trial which resulted in a mistrial, the district court had found that the case was sufficiently complex to toll the speedy trial requirement. The district court was apparently referring to 18 U.S.C. § 3161(h)(8)(B)(ii), which lists as permissible factors in determining whether the ends of justice would be served, "[w]hether the case is so unusual or so complex, * * *, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

4. This question must be distinguished from the waiver that occurs when a defendant, unlike Kucik, fails even to object to a violation of the Speedy Trial Act before trial. See 18 U.S.C.

*Ray,* 768 F.2d 991, 998 n. 11 (11th Cir. 1985); *United States v. Pringle,* 751 F.2d 419, 434–435 (1st Cir.1984); *United States v. Carrasquillo,* 667 F.2d 382, 388–390 (3d Cir.1982). This position has been intelligently qualified by the First Circuit, however, to allow for the exclusion of delays which were caused or furthered by the defendant's waiver. *Pringle,* 751 F.2d at 434; see also *United States v. Kington,* 875 F.2d 1091, 1108 (5th Cir.1989) (dicta calling *Pringle* exception to general rule a "sensible maxim"); *Mentz,* 840 F.2d at 331 (dicta quoting *Pringle* favorably).

We agree with this approach. Where a defendant actively participates in a continuance covering a discrete period of time— here a period of less than two weeks to allow the government a chance to review its position—he cannot then "sand-bag" the court and the government by counting that time in a speedy trial motion. We do not mean to imply that the record proves that defense counsel intentionally set a trap for the government and the court. This would be difficult to prove and in any case the district court made no such finding. The district court did make clear, however, that defense counsel agreed to exclude the time from speedy trial considerations. By filing the motion for a transcript, and then taking the position at the hearing at which that motion was considered that the production of the transcript could be delayed for a fixed, limited period pending a decision by the government on retrial, the defense contributed to the delay of twelve days.

### B.

*Williams instruction*

■ Turning to the issue dealt with squarely in this Court's prior opinion in this case, the district court in the second trial on remand used an instruction tendered by the government: "A share draft is not a statement that the drawer has funds in his account sufficient to pay it." See *Kucik,* 844 F.2d at 498 ("We know from *Williams* * * * that a check is not a statement that the drawer has funds in his account suffi-

§ 3162(a)(2); *United States v. Asubonteng,* 895

cient to pay it * * *."). In doing so, the district court rejected as somewhat confusing Kucik's proposed instruction, which stated: "A draft is not a factual assertion at all and therefore cannot be characterized as 'true' or 'false.' A draft does not, in terms, make any representation as to the state of the drawer's account balance."

Neither the Supreme Court in *Williams* nor this Court in its prior opinion dictated the specific wording of an instruction to be used in a case such as this one. While Kucik's proposed instruction is stated in a more emphatic tone, it does not convey any relevant information not conveyed by the instruction given. Even if we preferred the nuances found in one instruction to the other, it is not our role to edit for style any jury instructions that accurately state the law and allow for consideration of the defendant's theory of the case. *United States v. Douglas,* 818 F.2d 1317, 1320–1321 (7th Cir.1987), certiorari denied, —— U.S. ——, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989). The instruction effectively met the objection stated in our prior opinion.

*Countermanding instruction*

■ The district court also rejected the following instruction proposed by Kucik: "Cashier's checks are not subject to countermand by the issuing bank." Kucik submits that his theory at trial was that he lawfully purchased the cashier's checks with the bank's consent and, as far as the bank was concerned, with "finality," so that he could not have stolen from the bank. Whether or not this proposed instruction is good law, the district court was not in error in concluding that it would do more to confuse the jury than to help it evaluate the defendant's theory. The instruction does not bear upon the crucial question of whether Kucik obtained the cashier's checks by false pretenses, but only raises questions about a remote question of "finality." Kucik's argument that this instruction was necessary is foreclosed by our prior opinion that Kucik could be tried under a false pretenses theory for buying the cashier's checks in a check-kiting scheme so long as the jury was in-

F.2d 424, 426–428 (7th Cir.1990).

structed that it could not rely upon the share drafts as affirmative statements.

### "Steal" instruction

■ Kucik's final objection to the jury instructions recalls some of the concerns raised by this Court in its first consideration of this case. It involves the definition of "steal" given by the district court to the jury. The bank robbery statute criminalizes taking away from a federally chartered or insured financial institution, "with intent to steal or purloin," anything of value exceeding $100. 18 U.S.C. § 2113(b). The language of 18 U.S.C. § 2113(b) does not define the word "steal." The district court instructed the jury as follows: "The term steal as used in these instructions means to take with the intent to deprive the owner permanently of the rights and benefits of ownership." Kucik objects that this instruction improperly lacked a scienter element and should have included a reference to wrongfulness or dishonesty, as did his proposed instruction. He asserts that whenever one innocently and lawfully buys an item one intends to deprive the owner of the item of his ownership rights.

In this Court's first opinion in this case, the Court noted that "theft does require an intent to deprive the owner or possessor of his property permanently," and then went on to observe that the law is unclear "on whether it is theft to take a person's property without his consent, intending to pay him in full." *Kucik*, 844 F.2d at 497. The Court further observed that "anyone who extracts money from a bank by a *deliberate misrepresentation* is guilty of violating section 2113(b)." *Id.* at 499 (citations omitted) (emphasis added).

The government asserts that the instruction given comes from this Court's discussion in *United States v. Guiffre*, 576 F.2d 126, 128 (1978) (18 U.S.C. § 2113(b) applies to "felonious takings with intent to deprive the owner of rights and benefits of ownership"), certiorari denied, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128. But as the Fifth Circuit has noted, *Guiffre* did not involve consideration of the question of specific intent and there is no indication that the

question was raised there. *United States v. Bell*, 649 F.2d 281, 284 n. 4 (1981), reversed, 678 F.2d 547 (1982) (en banc), affirmed, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

We need not settle the intent question, however, because the wording of the instruction given by the district court is overwhelmingly suggestive of wrongfulness. Kucik's argument is creative, but not convincing for the following reasons: (1) the word "deprive" connotes dispossession, not simply acceptance on the basis of exchange; (2) the phrase "rights and benefits of ownership" suggests a package of rights that includes the right not to be deprived of one's possessions or wealth without full consent; (3) the word "steal" itself already carries a strong connotation of dishonesty and thus the purported ambiguity pointed out by Kucik does not overcome the presumption evident in ordinary English usage that when one steals one does so with ill purpose.

### C.

■ Finally, Kucik maintains that he should be resentenced because the district court improperly required him to make restitution in the amount of $301,000 as a condition of the sentence of five years' probation he received on the final three counts of the indictment.

Kucik first argues that he is now subject to a greater penalty after his appeal to this Court than he was in his trial, when no restitution was ordered. In the event that he is unable to pay, Kucik complains, he faces the possibility of being incarcerated on those counts. This argument is foreclosed by *United States v. Feldman*, 825 F.2d 124, 132–134 (7th Cir.1987), and the cases cited therein since Kucik does not attempt to prove that the district court was motivated by vindictiveness. As to the chance of imprisonment, Kucik cannot be imprisoned for failing to pay a fine unless he has the resources at his disposal with which to pay the fine. Kucik may raise the claim of unconstitutional imprisonment for debt if and when that possibility presents itself.

Kucik next asserts that the record does not support the $301,000 figure. To the contrary, because a judgment in that amount has been entered against the bank by the credit union in a civil case, there is the strongest evidence that this an accurate figure.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.