UNITED STATES of America, Plaintiff,

v.

Charles E. BALDWIN, Defendant.

No. IP 95–5–CR–01 H/F.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 28, 1997.

Joshua Minkler, Office of the U.S. Atty., Indianapolis, IN, for plaintiff.

Linda Wagoner, Indiana Federal Community Defenders, Indianapolis, IN, for defendant.

## ENTRY ON DEFENDANT'S MOTION TO DISMISS

HAMILTON, District Judge.

Defendant Charles E. Baldwin was indicted on January 11, 1995, for possession of cocaine base with intent to distribute it. Defendant has now filed a motion to dismiss this action as a sanction for failure to comply with the 70–day time limit between indictment and trial under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). He asserts that this court lost jurisdiction over him before June 23, 1995, when the government moved to vacate the scheduled trial on the basis that defendant had violated the terms of his pretrial release and had disappeared to parts unknown. Defendant's motion to dismiss is now ripe for decision. His motion to dismiss is denied for two independent reasons. First, several days that defendant needs to have counted toward the 70–day limit should be excluded under § 3161(h)(1)(F) & (J) as delay resulting from the filing and prompt disposition of two motions for continuances. Second, even if the 70–day limit had run before defendant's scheduled trial date in June 1995, defendant's failure to move for dismissal and his flight from the jurisdiction and unavailability for the scheduled trial must be deemed a waiver of any right to dismissal he may have had prior to his flight.

### Facts

Under the Speedy Trial Act, the critical facts are found in chronology and the court's own records and docket sheet. Defendant Baldwin was arrested by Marion County Sheriff's deputies on December 12, 1994, when a search of a house where he was present turned up substantial quantities of cocaine base. Some of the cocaine base was in the pocket of a shirt that Baldwin was lying or sitting on at the time of the search and arrest. On December 14, 1994, a federal complaint was filed alleging the same offenses for which Baldwin was eventually indicted. An arrest warrant was also issued. On December 19, 1994, the return on the

federal arrest warrant was made and Baldwin made his first appearance before a federal judicial officer, Magistrate Judge Foster, for an initial appearance on the charges in the federal complaint pursuant to Fed. R.Crim.P. 5. On December 21, 1994, Magistrate Judge Foster ordered that Baldwin be released prior to trial subject to several conditions, including a requirement that he reside at the Volunteers of America facility in Indianapolis and abide by its rules and regulations.

On January 11, 1995, exactly 30 days after his initial arrest by Marion County Sheriffs deputies, Baldwin was indicted by a federal grand jury for possession of cocaine base with intent to distribute in an amount in excess of 50 grams.[1] Then, on January 17, 1995, Baldwin had his initial appearance before Magistrate Judge Foster on the indictment. A trial date of March 13, 1995, was set at that hearing. Baldwin remained subject to the same conditions of pretrial release.

On March 2, 1995, Baldwin filed a motion to continue the trial date. Defendant's motion stated that defense counsel and the government were "exploring some new developments in the case" and required more time to prepare for trial or disposition. The government concurred in the motion. On March 3, 1995, the court granted defendant's motion to continue and set a new trial date of May 22, 1995. The court's order on defendant's motion to continue made the findings required under 18 U.S.C. § 3161(h)(8)(A) to exclude the delay from the 70–day calculation. On May 10, 1995, the court, on its own motion, vacated the trial date of May 22, 1995, and continued the trial to June 5, 1995. Unfortunately, that order stated no reasons and contained no findings that could support exclusion of those 14 days under the Speedy Trial Act calculations. Next, on May 22, 1995, the government moved to continue the new June 5, 1995, trial date based on a scheduling conflict with the trial of an older criminal case then pending before another district

judge. The defense did not object to the government's motion for a continuance. On May 26, 1995, the court granted the government's motion to continue and set a new trial date of June 26, 1995. The court's order granting the government's motion made the findings required under 18 U S.C. § 3161(h)(8)(A) to exclude the time from June 5, 1995, to June 26, 1995, from Speedy Trial Act calculations.

On approximately Saturday, June 3, 1995, defendant Baldwin failed to return to the Volunteers of America facility in Indianapolis where he had been ordered to reside as a condition of pretrial release. On June 6, 1995, the government filed a motion to revoke bond, and a warrant was issued for Baldwin's arrest. Then, on June 23, 1995, the government moved to vacate the June 26, 1995, trial date based on Baldwin's flight and unavailability for trial. The court granted that motion and found that the resulting delay should be excluded from Speedy Trial Act calculations pursuant to 18 U.S.C. § 3161(h)(3)(A) & (B) (excluding delays resulting from defendant's absence) and (h)(1)(F) (excluding delays resulting from any pretrial motion). This action then remained dormant until January 23, 1997, when the government petitioned for a writ of *habeas corpus ad prosequendum* after Baldwin was located in a correctional facility in New York. This court issued the writ and Baldwin was returned to Indiana to face the pending cocaine base charge.

### Discussion

The issue in this case turns on application of the 70–day time limit in 18 U.S.C. § 3161(c)(1), which provides: "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is

---

1. The indictment also alleged that Baldwin used and carried a firearm in connection with the cocaine offense in violation of 18 U.S.C. § 924(c). The government has stated that it intends to dismiss that charge based on the Supreme Court's decision in *Bailey v. United States*, 516 U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which was issued after Baldwin was indicted.

pending, whichever date last occurs." The Act provides for numerous grounds upon which periods of time before trial may be excluded from the count toward the 70–day limit. See 18 U.S.C. § 3161(h).

Defendant Baldwin asserts that the 70–day clock began running on January 11, 1995, the day of his indictment. He counts the 61 days from January 11, 1995, to March 13, 1995. He does not count the 70 days from March 13, 1995, to May 22, 1995, for that was a delay resulting from his own request for a continuance of the trial. By this calculation, the seventieth non-excluded day after indictment was May 31, 1995. (Baldwin agrees that time from June 5, 1995, forward should not be counted pursuant to the court's orders of May 26, 1995, and June 26, 1995.)

The government argues that the 70–day clock did not begin running until January 17, 1995, when Baldwin appeared before Magistrate Judge Foster for the initial appearance on the indictment. The government also excludes from the count a total of seven days connected with two motions for continuances: March 2 and 3, 1995, as well as May 22–26, 1995. If the government's position is correct, then only 62 days counting toward the 70–day limit had run as of June 5, 1995, when the government and defendant agree the clock definitely stopped.

There are three distinct issues here. First, did the 70–day clock begin running when Baldwin was indicted or when he appeared before Magistrate Judge Foster six days later? Second, are days when motions for continuances are filed, pending, and promptly decided properly excluded from the count? Third, did Baldwin's flight and failure to appear for the scheduled trial amount to a waiver of any right to dismissal that he might have had under the Speedy Trial Act?

■ The 70–day clock began running in this case on January 11, 1995, the date that Baldwin was indicted. By that time he was already under federal arrest, was subject to federal supervision, and had already appeared before a judicial officer of this court, the court in which the charge was pending. See 18 U.S.C. § 3161(c)(1). The Speedy Trial Act plainly contemplates the possibility that a defendant will appear before a judicial

officer before an information or indictment is filed, and in such situations, the clock begins to run on the date of the indictment. The law in this circuit is clear that where a "defendant has been arrested and appeared before a magistrate prior to his indictment, the time commences running with the indictment." *United States v. Owokoniran,* 840 F.2d 373, 374 (7th Cir.1987) (noting that the statute "clearly contemplates that the indictment can be the 'last occur[ring]' step, triggering the running of the 70–day period"), accord, *United States v. Carrasquillo,* 667 F.2d 382, 384 (3d Cir.1981) (any other result would mean that the date of the indictment could *never* be the date that "last occurs," making the "choice of dates provided in section 3161(c)(1) superfluous"). The six days from January 11, 1995, through January 17, 1995, are included for purposes of the 70–day clock.

■ The government seeks to exclude March 2, 1995, the date that defendant filed his motion for continuance, and March 3, 1995, the date the court granted that motion, as well as May 22 to May 26, 1995. The government filed its motion for continuance on May 22, 1995, and the court granted it on May 26, 1995. The government contends that both periods are excludable under 18 U.S.C. § 3161(h)(1)(F) and (J), which provide in relevant part:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
>    *     *     *     *     *     *
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
>    *     *     *     *     *     * .
>
> (J) delay reasonably attributable to any period, not to exceed thirty days,

during which any proceeding concerning the defendant is actually under advisement by the court.

Defendant argues that these provisions should not apply to motions for continuances in view of the Act's more specific treatment of motions for continuances in § 3161(h)(8). However, subsection (h)(1)(F) refers to "any pretrial motion," and the Seventh Circuit and other courts have applied that provision to a wide range of motions, including motions for continuances. See *United States v. Tanner*, 941 F.2d 574, 581 (7th Cir.1991) (excluding days connected with two motions for continuances); *United States v. Pringle*, 751 F.2d 419, 432–33 (1st Cir.1984) (excluding days connected with three motions for continuances); *United States v. Darby*, 744 F.2d 1508, 1517–18 (11th Cir.1984) (excluding six days from date motion for continuance was filed until it was denied), see also *United States v. Kucik*, 909 F.2d 206, 209–10 (7th Cir.1990) ("any pretrial motion" language excluded seven days from filing of pretrial motion for transcript until court's ruling), *United States v. Mentz*, 840 F.2d 315, 327 & n. 25 (6th Cir.1988) ("any pretrial motion" language applied to motions to permit visitation with defendant in county jail); see generally *Henderson v. United States*, 476 U.S. 321, 326–30, 106 S.Ct. 1871, 1874–77, 90 L.Ed.2d 299 (1986) (giving broad effect to language of § 3161(h)(1)(F)) On the basis of the statutory language and these cases, the court finds that the seven days when motions for continuances were filed, pending, and decided should be excluded from the 70–day clock.

Based on these conclusions—starting the clock on January 11, 1995; excluding March 2 and 3, 1995; excluding the time from March 13, 1995, to May 22, 1995; excluding May 22, 1995, through May 27, 1995; and also excluding all days beginning on June 5, 1995—the court finds that 68 days had run on the 70–day clock before defendant Baldwin violated the terms of his pretrial release, fled, and made himself unavailable for trial. On that basis, Baldwin's motion to dismiss must be denied.

■■■ However, because the relevant case law concerning the exclusion of the days connected with filing and deciding mo-

tions to continue appears to be relatively sparse and could be qualified or limited on further consideration, the court will address an independent reason for denying the motion to dismiss. That reason is waiver. Under defendant's theory, he had a right to dismissal of the charges against him as of approximately June 1, 1995, the seventy-first countable day after indictment according to defendant's calculations. He did not move for dismissal. Instead, two days later, he violated the terms of his pretrial release and fled to parts then unknown. This flight and failure to appear warrant a finding that defendant waived any right under the Speedy Trial Act that he might have had at that time to dismissal of the charges against him.

Where the time limit expires under the Speedy Trial Act, the defendant is entitled to dismissal of the charges against him. 18 U.S.C. § 3162(a)(2). The dismissal may be either with or without prejudice. The district court making that choice must consider, among other factors, the seriousness of the offense, the facts and circumstances that led to the dismissal, and the impact of a reprosecution on the administration of the Speedy Trial Act in particular and the administration of justice in general. *Id.; United States v. Taylor*, 487 U.S. 326, 333–35, 108 S.Ct. 2413, 2417–19, 101 L.Ed.2d 297 (1988) (Speedy Trial Act leaves choice to the "guided discretion" of the district court). The mandatory dismissal under the Speedy Trial Act emphasizes the importance of compliance with its deadlines. When considering questions under the Speedy Trial Act, courts need to remember that the Act protects both the rights of defendants and the interest of the public in speedy resolution of criminal charges. See, *e.g. United States v. Gambino*, 59 F.3d 353, 360 (2d Cir.1995); *United States v. Kucik*, 909 F.2d at 210–11 *United States v. Pringle*, 751 F.2d at 434. As a general rule, therefore, defendants may not elect to waive the provisions of the Act. *E.g., United States v. Gambino*, 59 F.3d at 359–360 (reviewing case law).

However, the Speedy Trial Act is not self-executing. The defendant must move for dismissal. Congress has specifically provided that failure to move for dismissal before

trial constitutes a waiver of the right to dismissal. 18 U.S.C. § 3162(a)(2); accord, *United States v. Alvarez*, 860 F.2d 801, 821–22 (7th Cir.1988) (collecting cases strictly enforcing waiver rule where defendants failed to move for dismissal before trial began, and holding that "demand" for speedy trial, in absence of motion to dismiss, was not sufficient to invoke statutory right to dismissal), *vacated on other grounds*, 956 F.2d 1165 (1992). The Second Circuit observed in *Gambino* that several circuits "have crafted an exception to the non-waiver rule, holding that when defendant's conduct causes or contributes to a period of delay, that time may be excluded from the running of the speedy trial clock." 59 F.3d at 360, citing *Pringle* and *Kucik*. The *Gambino* court explained:

> Where the public's interest in swift justice is not disregarded, such an exception makes good sense. The reason is plain. The provisions of the Speedy Trial Act are not to be mistaken for the rules of a game where defense counsel's cunning strategy may effectively subvert Congress' goal of implementing sound trial management. It is possible, of course, that an overly broad application of the exception could swallow the non-waiver rule, permitting a waiver to be found whenever a defendant fails to object to continuance. Were such to result, it would subvert Congress' aim that delays be permitted only as provided for in the Act.
>
> As a result, those courts recognizing the exception have placed tight restrictions on the finding of waiver.

59 F.3d at 360 (citations omitted).

The present case does not fall within the scope of the exception recognized in *Pringle, Kucik, Gambino*, and other cases. The issue here is not whether time should be excluded from the 70–day clock, but whether a ripe entitlement to dismissal was waived by defendant's flight and failure to appear for trial.[2] The concerns raised in the *Pringle, Kucik, and Gambino* line of cases are nevertheless relevant here. In light of those concerns, it is reasonable to construe the statutory waiver provision—for failure to move for dismissal before trial—as applying where the defendant fails to move for dismissal before a scheduled trial and makes himself unavailable for the scheduled trial in violation of the terms of his pretrial release.

The reason for this extension of the statutory waiver provision is that a different result would allow the fleeing defendant to use the Speedy Trial Act to completely escape criminal liability. Under defendant's theory, he would now be entitled to dismissal of the indictment against him Under the Act, the dismissal could be either with or without prejudice. 18 U.S.C. § 3162(a)(2), accord, *United States v. Taylor*, 487 U.S. at 339–40, 108 S.Ct. at 2420–21 (defendant's failure to appear for trial on 69th day weighed in favor of dismissal without prejudice for post-capture delays that violated Speedy Trial Act). If defendant Baldwin had filed a meritorious motion for dismissal on June 1, 1995, he would have been entitled to dismissal at that time. It is highly probable that such a dismissal would have been without prejudice so that the government could have sought a new indictment.[3]

Defendant Baldwin did not file such a motion. Instead, he violated the terms of his pretrial release, departed Indiana, and made himself unavailable for the scheduled trial. After his eventual arrest and return to this

---

2. The facts here also are different from those in *United States v. Taylor*, where the defendant had failed to appear for a trial scheduled on the sixty-ninth countable day after his indictment, and the violation of the Speedy Trial Act resulted from later delays in returning him for trial after his capture. See 487 U.S. at 328, 108 S.Ct. at 2415.

3. If there had been a violation of the Speedy Trial Act at that point, it would have been the result of the court's failure to address Speedy Trial Act issues explicitly in the May 10, 1995, order continuing the trial for two weeks. In view also of the seriousness of the charge—possession of a significant quantity of cocaine base with intent to distribute—and the absence of any deliberate violation of the Speedy Trial Act or any pattern of such violations, and the apparent absence of prejudice to defendant, dismissal without prejudice probably would have been appropriate. See *United States v. Taylor*, 487 U.S. at 337–43, 108 S.Ct. at 2419–23 (abuse of discretion to dismiss with prejudice where case presented "isolated unwitting violation," charge was serious, defendant was not prejudiced by violation, and defendant's flight also contributed to substantial, but excludable, delay).

jurisdiction, should he still be able to argue that the pre-flight violation of his Speedy Trial Act rights entitled him to dismissal? Suppose for purposes of argument that the fleeing defendant manages to avoid capture until the statute of limitations has run on the original charges. *United States v. Taylor* is a strong indicator that dismissal in the case of a defendant who has himself failed to appear for a trial should ordinarily be without prejudice. 487 U.S. at 339–40, 108 S.Ct. at 2420–21. But if the statute of limitations has run in the meantime, dismissal without prejudice would have the same practical effect as dismissal with prejudice—immunity from criminal liability. Under those circumstances, it would twist the Speedy Trial Act beyond recognition to hold that the defendant who fled the jurisdiction (and thus thoroughly frustrated the public's interest in a speedy trial) should be entitled to relief that would bar a new prosecution.

Defendant has suggested that the court apply to the waiver of rights under the Speedy Trial Act the same standard the Supreme Court applied in *Crosby v. United States,* 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), to waiver of a defendant's right to be present for trial. The suggestion is not persuasive. First, under the Speedy Trial Act, a right to dismissal is waived by a failure to make a timely assertion of that right. See 18 U.S.C. § 3162(a)(2). The court need not question the defendant and make a record of the sort of knowing and voluntary waiver that is required, for example, to waive the right to trial by jury or the right to counsel. Second, *Crosby* did not make sweeping pronouncements about waiver of the defendant's right to be present at trial. The Court's opinion simply applied the text of Rule 43 of the Federal Rules of Criminal Procedure. See 506 U S. at 258, 262, 113 S.Ct. at 751, 752–53. Moreover, the opinion in *Crosby* took care to ensure that a fleeing defendant could not expect thereby to gain tactical advantage in the event of his recapture. *Id.* at 262, 113 S.Ct. at 752–53.[4] The position advocated by defendant Baldwin

would offer the prospect of a prolonged flight resulting in a complete bar to prosecution on the underlying offense. The courts should not read that invitation to flight into the statute unless the statutory language plainly mandates that result, which this statutory language does not.

Accordingly, the court holds that where a defendant with a ripe Speedy Trial Act claim for dismissal of the pending charges violates the terms of his pretrial release and makes himself unavailable for the scheduled trial, the defendant should be deemed to have failed to move for dismissal "prior to trial" within the meaning of 18 U.S.C. § 3162(a)(2). Recognizing this narrow extension of the statutory waiver provision to this unusual situation does not undermine the terms or policies of the Speedy Trial Act. Congress expressly provided for waiver if a defendant fails to move for dismissal before trial. It is reasonable to construe that language as applying to a failure to move for dismissal before a *scheduled* trial that is delayed solely by the defendant's own failure to appear In that situation, the public's interest in a speedy trial has been impaired by the original violation but also by the defendant's failure to appear for trial. The remedy of dismissal for the benefit of such a defendant would be a strange way to vindicate the public's interest in his speedy trial.

For the foregoing reasons, defendant Baldwin's motion to dismiss the indictment is hereby DENIED.

So ordered.

---

4. The court assumes, however, that few fleeing defendants base their decisions to flee on a careful assessment of the possible consequences in the event they are recaptured. It seems far more likely that they concentrate on the prospects of successful flight as opposed to the consequences of staying to face trial.