**UNITED STATES of America,**
Appellee,

v.

**Thomas G. LONGO, Defendant–
Appellant.**

No. 00–1791.

United States Court of Appeals,
Second Circuit.

June 8, 2001.

Roger W. Wilcox, Jr., Paul J. Cambria, Jr., Lipsitz, Green, Fahringer, Roll, Salis- bury & Cambria LLP, Buffalo, NY, for appellant.

Joseph M. Guerra, III; James P. Kennedy, Jr., on the brief, for Denise E. O'Donnell, United States Attorney, W.D., NY, for appellee.

Present CALABRESI, KATZMANN, Circuit Judges, and KAPLAN, District Judge.*

### SUMMARY ORDER

UPON DUE CONSIDERATION, it is ORDERED, ADJUDGED, AND DE-CREED that the judgment of the district court be and hereby is AFFIRMED.

Appellant Thomas Longo ("Longo") appeals from the district court's order denying, without a hearing, his motion to withdraw his guilty plea pursuant to Fed. R.Crim.P. 32(e). We affirm.

### BACKGROUND

In March 1996, Lester Williams and William Cope traveled from Cleveland, Ohio to Buffalo, New York to purchase 1,000 pounds of marijuana. The sellers turned out to be undercover Drug Enforcement Agency agents, and Williams and Cope were arrested. Approximately $146,000, which was to be used as a down payment on the marijuana, was seized. Williams and Cope both agreed to cooperate with the Government.[1] Williams informed the Government that appellant Longo, an Ohio lawyer, had provided a portion of the $146,000 down payment.

According to Williams, he and Longo had been partners in a bar/restaurant in a suburb of Cleveland, Ohio. In July 1995, the bar burned to the ground. On Janu-

---

1. After Cope pled guilty to conspiracy to possess with intent to distribute marijuana, but before Longo was indicted in the instant case, Cope died.

ary 30, 1996, insurance proceeds of $130,000 were deposited into a business account for the bar. In late February 1996, Caroline Schweter, Longo's legal secretary, at Longo's request, obtained two bank checks, each in the amount of $65,000, made payable to Longo and Williams. A few days later, Longo and Williams traveled to Atlantic City, where they deposited their checks into Caesar's Palace casino. Over the next twenty-four hours, they withdrew, in cash, the $130,000, with each retaining his share. On March 11, the day before Williams went to Buffalo to purchase the marijuana, Longo gave Williams a large amount of cash (the approximately $65,000 that Longo brought back from Atlantic City, plus additional funds) toward the purchase.

After Williams was released on bail, and as part of his cooperation with the Government, Williams recorded conversations with Longo in Cleveland. During those conversations, Longo made numerous inculpatory statements concerning his investment in the marijuana purchase. In addition, Williams supplied the Government with documents fabricated by Longo to suggest that Longo gave Williams Longo's share of the insurance proceeds for legitimate business reasons. These documents included a $65,000 Promissory Note, made out to Longo and back-dated to February 29, 1996, as well as a Purchase Agreement signed by both Williams and Longo. The documents purported to represent a transaction in which Longo purchased the remaining half of the bar for $50,000 and, in return, Longo canceled the $65,000 Promissory Note. Schweter, Longo's legal secretary, told the Government that following Longo's indictment, Longo questioned Schweter about her Grand Jury testimony, told her to lie about when she typed the Promissory Note, and indicated that he would probably delete the relevant files on her computer. The Government later searched Schweter's computer and found the files for the Promissory Note and the Purchase Agreement. The search revealed that the Promissory Note file had in fact been created in October 1996 and was modified in January 1997, even though the document, on its face, was dated February 29, 1996.

On September 19, 1997, in a four-count indictment, Longo was charged with various crimes related to the Buffalo drug deal. After a lengthy discovery process, the parties reached a plea agreement. As part of that agreement, the Government filed a Superseding Information charging Longo with misprision of a felony, in violation of 18 U.S.C. § 4. Longo pled guilty to the Information, and, on February 1, 2000, the district court (Skretny, *J.*) accepted his plea.

After pleading guilty, but prior to being sentenced, Longo discovered the existence of allegedly exculpatory material: a tape-recorded conversation between Detective James Mendolera, of the Southeast Area Law Enforcement ("SEALE") Narcotic Task Force in Ohio, and an unindicted coconspirator named Matt Gentile. The tape allegedly contained an exchange in which Gentile denied that Longo had ever offered him drugs, that he had ever seen Longo dealing drugs, and that he had ever heard that Longo was dealing drugs. More important, Gentile informed Detective Mendolera that Williams had instructed Gentile not to tell Longo about the proposed drug deal. "And, as far as I know now, I don't even know if he knew what [Williams] was doing, because [Williams] told me, he said, 'Don't tell Tommy [Longo] about this.' Now, whether he's just saying that because Tommy says tell everybody I don't know, I don't know that." When Detective Mendolera mentioned the tape to Longo, after Longo had pled guilty, Longo expressed surprise at the tape's existence. Victoria Mendol-

era, who is Detective Mendolera's stepmother and Longo's maternal aunt, was present during this latter conversation.

In his Rule 32(e) motion to withdraw his plea, Longo claimed to the district court that Assistant United States Attorney James P. Kennedy was aware of both the existence and the substance of the tape prior to Longo's guilty plea. Although initially unaccompanied by any factual submissions, Longo eventually submitted a purported transcript of the Gentile tape as well as an affidavit from Victoria Mendolera.[2] Longo argued that the Government committed a *Brady* violation by failing to turn over the Gentile tape.

According to Victoria Mendolera, Detective Mendolera told Victoria Mendolera that, in January of 1999, Detective Mendolera had informed Kennedy about the recording of the exchange between himself and Gentile. Kennedy had allegedly said to Detective Mendolera that Kennedy would get back to him about the tape. In late April 2000, after Longo found out about the tape, Detective Mendolera supposedly told Victoria Mendolera that he had recently discussed the matter with Kennedy again, and Kennedy denied having knowledge of the tape. Detective Mendolera allegedly answered, "Are you calling me a liar?"

In response to Longo's Rule 32(e) motion, Kennedy submitted an affidavit to the district court. In it, he stated that, on January 27, 1999, he received a memo from Robert Reid, Chief of Police of the Bedford (Ohio) Police Department. Reid forwarded a police report by Detective Mendolera detailing the arrest of Gentile for cocaine possession. The report notes that a personal telephone book seized from Gentile's residence included Longo's name and phone number. The report makes no mention, however, of any statements obtained from Gentile.[3] Upon receiving the memo and report, Kennedy contacted Reid, who informed him that Detective Mendolera was related to Longo. Kennedy then spoke to Mendolera, the only time he did so prior to the plea agreement, during which time they discussed Mendolera's report. Mendolera indicated that the report was accurate. Kennedy told Mendolera that he expected to call Mendolera as a witness at trial. According to Kennedy, at no time during the conversation did Mendolera inform Kennedy that Mendolera took any kind of statement from Gentile, let alone a recorded statement. In addition, Mendolera did not advise Kennedy that Gentile had provided any information about Longo, much less exculpatory information.

On February 5, 1999, also according to Kennedy's affidavit, Reid sent Kennedy a memo with the name and telephone number of the prosecutor assigned to the Gentile case in Ohio. Kennedy learned from that memo, for the first time, of the existence of the taped conversation. The memo contained no information about the contents of the tape, however. Because the telephone number Reid provided was non-functioning, Kennedy never spoke to the prosecutor. Kennedy explains that after finding the number not to be working, he pursued the tape no further (1) because

---

2. Detective Mendolera was forbidden by the City of Garfield Heights (Ohio) Police Department from speaking with the defense or testifying in this matter except pursuant to a court-ordered subpoena.

3. The report also details a conversation, initiated by Longo, between Longo and Detective Mendolera, in which Longo indicated that he wanted to assist in the Gentile investigation. Longo also stated that he believed Gentile could testify that Longo was not involved in the marijuana purchase and that Longo had told Williams not to go through with it.

he thought the tape related only to the Ohio charges pending against Gentile and he had no reason to believe that the tape involved Longo in any way; and (2) because he did not intend to prosecute Gentile or call him as a witness. Kennedy subsequently sent a letter to defense counsel forwarding Reid's memo and Detective Mendolera's police report.[4] In late April 2000, after Longo pled guilty, Kennedy was contacted by several police officers and prosecutors from Cleveland about the taped conversation. Kennedy informed them that he did not have such a tape nor had he seen or listened to such a tape.

On June 12, 2000, the district court heard oral argument on Longo's 32(e) motion and subsequently denied it. The court found (1) that Longo failed to establish that Kennedy had knowledge of the Gentile tape; (2) that even if the Government had known, the Government could not be deemed to have suppressed the evidence because Longo knew or should have known that Gentile might have provided exculpatory testimony; and (3) that even if the Government had known about and suppressed the Gentile tape, the evidence was not material, since it was neither admissible nor persuasive. Finally, the district court denied Longo a hearing on the matter. The court thereafter denied Longo's motion for reconsideration, and sentenced Longo to 36 months imprisonment and a $20,000 fine.

Longo appeals, arguing that the district court should have granted his Rule 32(e) motion, or, in the alternative, granted him an evidentiary hearing.

## DISCUSSION

■ We review the district court's findings of fact for clear error, and its decisions to deny Longo's motion to withdraw his guilty plea for abuse of discretion. *See United States v. Williams*, 23 F.3d 629, 634–35 (2d Cir.1994). The district court may require an evidentiary hearing if the defendant has presented "some significant questions concerning the voluntariness or general validity of the plea," but a defendant is not entitled to such a hearing. *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir .1992). Where withdrawal is requested on the basis of a *Brady* violation, whether the alleged suppressed evidence is material is a mixed question of law and fact, regarding which we "conduct our own independent examination of the record." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir.1995) (internal quotation marks omitted). The defendant bears the burden of proving materiality. *See id.* at 1208.

■ Rule 32(e) allows a defendant to withdraw a guilty plea before sentencing for "any fair and just reason." Longo has conceded that the only reason for his plea withdrawal is the alleged suppression of the Gentile tape. Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, in a criminal prosecution, to the extent that a prosecutor knows of material evidence favorable to the defendant either because it is exculpatory or because it can serve to impeach a key witness, the government has a due process obligation to disclose that evidence to the defendant. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 432–33, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). If the Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead guilty, "[t]he defendant is entitled to make that decision with full awareness of favorable material evidence known to the Government." *United States*

---

**4.** Reid's memo indicated that Reid had originally sent a copy of that memo to Longo as well.

v. Avellino, 136 F.3d 249, 255 (2d Cir.), reh'g denied, 136 F.3d 262 (2d Cir.1998); see also United States v. Persico, 164 F.3d 796, 804–05 (2d Cir.1999).

To succeed on his Rule 32(e) motion on the basis of a Brady violation, Longo must demonstrate "(1) that the government failed to disclose favorable evidence, and (2) that the evidence it 'suppressed' was material." Payne, 63 F.3d at 1208. In the withdrawal context, "evidence is considered material where there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." Persico, 164 F.3d at 804–05 (internal quotation marks omitted); see also Avellino, 136 F.3d at 256–57. This test is objective, involving an inquiry into the likely persuasiveness of the undisclosed information. See id.

■ Under this test, the evidence Longo alleges the Government suppressed was either not suppressed or is not material. As an initial matter, the most critical of Gentile's statements, that Williams told Gentile not to tell Longo about the drug deal because Longo did not know about it, is inadmissible hearsay that does not fall under any of the recognized exceptions to the hearsay rule. See Fed.R.Evid. 801–807. Appellant specifically contends that Williams' statement would be admissible under Rule 801(d)(2)(E), as a statement by a coconspirator in furtherance of the conspiracy. However, pursuant to that rule, the statement must be "offered against a party." Here Longo offers it in his favor; as a result, Williams' statement does not come within the 801(d)(2)(E) exception. "If the evidence would not have been admissible, it obviously would not have had any influence on the jury," and therefore cannot be material. Persico, 164 F.3d at 805.[5]

Even if the Gentile tape, and Gentile's recounting of Williams' statement, were admissible, its persuasive value is too insignificant to render it material. Reading Gentile's statement in its most exculpatory light, as indicating that Longo did not know that Williams was going to proceed with the Buffalo transaction, it does little to undermine the considerable evidence of misprision of a felony obtained by the Government. This evidence consists of Longo's own inculpatory statements to both Williams and Schweter; Longo's falsification of evidence in creating the Promissory Note and Purchase Agreement; Longo's attempt to suborn perjury when instructing Schweter regarding her grand jury testimony about the promissory note; and the corroborative documentary evidence about Longo and Williams' Atlantic City "washing" of the insurance proceeds. This substantial evidence of Longo's partic-

**5.** If the Gentile tape were introduced not for the truth of the matter but rather to impeach Williams, it would nonetheless remain immaterial. Generally, impeachment evidence may be material where the witness in question supplies the only evidence linking the defendant to the crime, see United States v. Giglio, 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), or the only evidence of an essential element of the crime. See Avellino, 136 F.3d at 256. Here, there is considerable documentary evidence of Longo's participation in and concealment of the drug deal, as well as statements by Longo himself. In addition, where undisclosed Government evidence "merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." Id. at 257. Williams' criminal record and the incentive the Government offered him for his cooperation indicate that, even if Longo could show inconsistencies between the Gentile tape and other statements made by Williams, any discrepancy that might tarnish Williams' credibility further might well be deemed cumulative.

ipation in and concealment of the Buffalo drug deal leaves no "reasonable likelihood" that the hearsay statements of an unindicted coconspirator awaiting trial on other narcotics charges in Ohio, even if admissible, would have led Longo to go to trial rather than plead guilty. Were the question open, we might wonder if the issue on a Rule 32(e) motion should be the likely persuasiveness of the undisclosed information or should focus instead on the fact that the defendant has in fact moved, immediately upon learning of the new evidence, to withdraw his plea. But the above-cited cases make clear that this court has already answered the question. *See Persico,* 164 F.3d at 804–05; *Avellino,* 136 F.3d at 256–57.

Because we conclude that the Gentile tape was not material, we need review neither the district court's determination that Kennedy had no knowledge of the tape nor the court's conclusion that, since Longo knew or should have known of Gentile's potentially exculpatory testimony, the evidence was not suppressed. *See United States v. Gambino,* 59 F.3d 353, 366–67 (2d Cir.1995) (holding that where evidence is not material, a court need not address whether or not the evidence was suppressed). Moreover, as Longo has alleged no issue of fact with regard to materiality that might have been shown had the district court conducted a hearing, we find that the district court did not abuse its discretion in denying Longo's motion without holding such a hearing.[6]

## CONCLUSION

In light of the ultimate immateriality of the Gentile tape, we conclude that the district court did not abuse its discretion in denying, without a hearing, Longo's motion to withdraw his plea. We have con-

sidered all of Longo's claims and found them to be without merit. We therefore AFFIRM the judgment of the district court.

---

**6.** *See McNally Wellman Co. v. New York State Elec. & Gas Corp.,* 63 F.3d 1188, 1194 (2d Cir.1995) ("We need not affirm for the rea-

sons expressed by the district court but may affirm on any ground supported by the record.").